White, J.
Counsel for plaintiff in error now assign as a ground for reversing the judgment against him, that the-court erred at the March term, 1870, in overruling the motion for his discharge.
A conclusive answer to this claim is, that the action of the court in regard to the motion to discharge, is not properly before us. The record of the proceedings upon the former' indictment forms no part of the record of the proceedings on the indictment on which the plaintiff was convicted; and the fact that the clerk has united the proceedings of the two cases in one transcript, gives them no different legal effect from what they would have, if they had been authenticated separately.
2. It is claimed by the counsel of the plaintiff in error *469 that on an indictment for murder in the second degree, the accused cannot, under the laws of this State, be convicted of manslaughter.
This claim rests on the idea that an indictment for murder in the second degree does not contain all the elements of manslaughter as defined by statute. It is said that to constitute manslaughter, the homicide must be “ unlawful; ” and that this word, though used in the statute, is not used in the indictment. It is admitted that the indictment contains a good charge of murder in the second degree. To constitute murder of this degree, it is essential that the homicide be committed “ purposely and maliciously; ” and, if so committed, it is necessarily unlawful. Otherwise, a person could be guilty of murder in the second degree, and yet the homicide, of which he was guilty, be lawful.
Section 39 of the act defining the different degrees of homicide, plainly shows the claim of the plaintiff to be without foundation. 1 S. & O. Stat. 416.
3. There is no valid objection to the admission of the evidence of Smith Davison as to the dying declarations of the deceased. The declaration of the deceased, in speaking of the fatal wound, that, “ it was done without any provocation on his part,” is objected to as being mere matter of opinion. Whether there was provocation or not, is a fact, not stated, it is true, in the most elementary form of which it is, susceptible, but sufficiently so to be admissible as evidence.
In Rex v. Scaife the declaration of the deceased was: “ I don’t think he would have struck me if I hád not provoked him.” This was received to prove the fact of provocation on the part of the deceased. 1 Moody & Rob. 551.
4. The questions to Rike, Thomas, and Lockert were allowed to be put under the latitude of cross-examination. A similar mode of interrogation has often been allowed for the purpose of aiding the jury in judging of the character of the witness from his own voluntary admissions. 2 Phillips on Ev. ch. 10, sec. 2, p. 946; 2 Russell on Crimes, oh. 5, secs. 3, 925, 931; 1 Starkie’s Ev., *p. 190.
*470 Roscoe states, that questions with regard to particular facta tending to degrade the witness, and affect his character and credit, may be put to him on cross-examination, even though irrelevant to the matter in issue; but the party putting them must be satisfied with the answers given by the witness, and cannot call witnesses to prove those answers false. Roscoe’s Grim. Ev., *p. 181.
In the late work of Taylor on Evidence, the statement of the rule is to the same effect. 2 Taylor’s Ev. sec. 1293.
In Rex v. Clarke, on the trial of the defendant for an assault with intent to commit a rape, the prosecutrix, on cross-examination, was allowed to be asked, whether she had not been sent twice to the house of correction, upon charges of having stolen money from her master several years ago. 2 Starkie’s R. 214-216.
In Yewin’s case, on the trial of the defendant for larceny, the principal witness, an apprentice of the defendant, was-allowed to be asked, on cross-examination, whether he had not been charged with robbing his master, and whether he had not afterwards said he would be revenged of him, and-would soon fix him in jail ? He denied both. The prisonei-’scounsel then proposed to prove, that he had been charged with robbing his master, and’ had spoken the words imputed to him. It was ruled that his answer must be taken as to-the former; but that, as the words were material to the-guilt or innocence of the prisoner, evidence might be adduced that they were spoken by the witness. 2 Campb. R. 638.
In a note to Rex v. Pitcher (1 Carr. & P. 86, 11 Eng. C. L. 323), a number of cases are given illustrating the practice-in the English courts in regard to this mode of examination. It is there said, that “ In practice, the asking of questions to-degrade the witness is regulated by the discretion of the learned judge, in each particular case.” In one of the cases-there referred to, the counsel for the prisoners, who were indicted for highway robbery, was allowed to ask a witness, who stated that he had been a constable, whether he had not been turned out of office for misconduct towards a prisoner.
In Brandon v. The People (42 N. Y. R. 265), the defend *471 ant was tried upon an indictment for larceny. Evidence was given tending to prove the commission of the offence, and the people rested. The defendant was herself examined as a witness, and denied the commission of the offence. On cross-examination the following question was put to her by the district attorney : “ Have you ever been arrested before for theft?” The objection to the question was overruled, and the witness answered in the affirmative. The defendant was convicted, and the conviction affirmed by the court of appeals. Hunt, J., in delivering the opinion of the court, said it had been, the practice of the courts of that State, from a very early period, to permit questions of that character to be put to the witness, and for the purpose indicated. “ Its abuse,” he said, is guarded against in two modes. 1. By the privilege of the witness to decline to answer any question which may disgrace him, or may tend to charge him as a criminal. 2. By the power of the court, of its own motion, to prohibit an unreasonable or oppressive cross-examination.”
The same principle was recognized in the previous cases of La Beau v. The People (34 N. Y. 223), and The Great Western Turnpike Co. v. Loomis (32 N. Y. 127).
It is difficult to lay down any precise rule fixing the limits to which a witness may be cross-examined on matters not relevant to the issue. This must in a great measure rest in the sound discretion of the court trying the cause. Mayhew v. Thayer, 8 Gray, 172. Such questions may well be allowed, when there is reason to believe it will tend to the ends of justice; but they ought to be excluded, when a disparaging course of examination seems unjust to the witness, and uncalled for by the circumstances of the case. Great Western Turnpike Co. v. Loomis, supra.
In the present case no question of privilege arose, and the circumstances show no abuse of discretion in allowing the-questions to be asked.
The objection now made in argument, that the indictment and record ought to have been produced, was not- made at-the time the questions were put. Neither the attention of the' court nor of opposite counsel appears to have been called to the; *472 manner of the proof; and if the objection could have been insisted on, it ought, to be available, to have been made at the time. As to the objection itself, see 2 Russ, on Crimes, p. 931.
The question in Newcomb v. Griswold, cited in argument (24 N. Y. R. 298), is different from the present. There is no question of actual conviction here, and the point whether the offence could be proved without the record, did not arise.
5. As to the overruling of the question put to the witness Thomas in regard to the deceased having made a different statement of the manner in which he received the wound. The statement proposed to be proved was neither a part of the res gestee, nor was it a dying declaration. It was therefore incompetent as original evidence. As impeaching testimony it was properly excluded under the rule laid down in Runyon v. Price, 15 Ohio St. 1. To admit it would, to some extent, afford a substitute to the defendant for the loss of cross-examination, .but it would deprive the deceased and the State of all opportunity of explanation.
6. The defendant gave evidence of good character prior and up to the time of the commission of the alleged offence. To rebut this evidence the prosecuting attorney was permitted to inquire and give evidence as to the bad character of the defendant a few months after that time.
“ Evidence of character is in the nature of hearsay, and the general rule in relation to that kind of testimony is, that it shall not be received if the hearsay be post litem motam. The reason for this is, ‘ that no man is presumed to be indifferent in regard to matters in actual controversy ; for when the contest has once begun, people generally take part on the one side or the other — their minds are in a ferment, and if they are disposed to speak the truth, facts are seen by them through a false medium. To avoid, therefore, the mischiefs which would otherwise result, all exparte declarations, even though made upon oath, referring to a date subsequent to the beginning of the controversy, are rejected.’ 1 Greenl. Ev., § 131. These remarks apply with equal force to evidence of the character of a person after a controversy, involving it, has commenced.” State v. Johnson, 1 Winston’s Law R. 151.
*473 We think, upon principle, the evidence of the State as to the bad character of the defendant subsequent to the commission of the offence ought to have been excluded.
7. As to the questions which the defendant was not allowed to ask for the purpose .of showing that in entering the premises where the homicide occurred the defendant was not in the commission of an unlawful act, it is sufficient to say, we discover nothing in the record rendering that fact material to any matter in issue. There was no evidence of the State which it tended to rebut, nor could it tend to justify or excuse the crime charged. The unlawful act with which the defendant was charged, was the act causing the homicide.
We deem it unnecessary to remark upon the other objections made. As there must be a new trial, the objection to the form of the verdict, and to the omission of the court to give to the jury, before the argument,.one of the instructions asked, will doubtless be obviated on another trial.
We will merely add, that we find nothing in the charge, of which the plaintiff in error can complain.
Judgment reversed for error in admitting evidence offered by the State as to bad character, and cause remanded for a new trial.
Scott, C.J., and Welch, Dat, and McIlvaine, JJ., concurred