## Supreme Court—General Term.—First Department.

October, 1878.

## BERRY *v.* PEOPLE.

(Affirmed, 1 *N. Y. Crim. Rep.* 57.)

### DISORDERLY HOUSE.—THEATER.—INDICTMENT.—EVIDENCE.

Where the evidence shows that an opera house, so called, owned by the prisoner, and licensed as a place of amusement, was so conducted by him that it became disreputable ; that the conduct of the inmates was grossly indecent and calculated to corrupt the morals of all who visited the house; and that, by the noises and tumult created therein, the peace and quiet of the community was disturbed; an indictment for keeping a disorderly house is sufficiently supported.

To support an indictment for keeping a disorderly house, it is not necessary to show that it is a nuisance, by reason of noise, etc., to the whole neighborhood; it is enough if it be shown that it is so kept as to be injurious to public morals.

Barnesciotta *v.* People, 10 *Hun*, 137, and Jacobowsky *v.* People, 6 *Id.* 524, followed.

It is not an abuse of discretion to admit testimony showing that the frequenters of such house, while going to and from the same, habitually disturbed the peace by noises, etc., upon the highway, though the prisoner be not directly connected therewith ; nor is it an abuse of discretion to admit the testimony of a witness as to the effect of the noise, etc., in the said house on himself and on the neighborhood, and to characterize it as an annoyance.

Where a witness for the defense has testified to all he saw while at said place of amusement, and that he saw nothing wrong, it is not such error as calls for a reversal, to refuse to allow him to state whether he saw anything immoral or indecent ; nor is it error calling for reversal to permit a witness for the prosecution to characterize the noises as "infernal" and "unearthly," where he subsequently describes the disturbances and states that they consisted of "shrieks, yells and howls."

The printed rules and regulations as to conduct of inmates, etc., posted in such house, are not admissible in evidence on behalf of the defense.

Testimony to show that certain plays produced in such house, which were charged to be immoral and indecent, were produced at other theatres, is inadmissible, the witness having testified to all he saw at such house when the plays were produced.

That such a house has been duly licensed as a place of amusement, and no complaint against it, or objection to its continuance, has been made at the office where the license was granted, is of no materiality.

Inquiry as to whether a witness has acted as an informer, being collateral to the main question involved, its extent rests in the discretion of the court. Its only legitimate purpose is to fairly exhibit the character of the witness to the jury.

It is not error to refuse a request to charge that certain witnesses, viz.: detectives in the employment of the " Society for the Prevention of Crime," through whom certain of the evidence showing that the accused had been guilty of keeping a disorderly house was obtained, are accomplices, or a request which assumes that they are such.

Where the court, upon the failure of a jury to agree, addresses to them remarks claimed to be improper, a general exception presents no question for review, unless it appears that no portion of such remarks was proper.

Where an indictment charging a common law offense, and concluding " against the statute," etc., is attacked for the first time on the trial, the conclusion is to be treated as surplusage.

WRIT OF ERROR to the Court of General Sessions of the Peace of the city and county of New York, to review the conviction of the plaintiff in error for keeping a disorderly house, and for maintaining an obscene nuisance.

Plaintiff in error, Jacob Berry, was convicted, April, 1882, and sentenced to pay a fine of $150, and to be imprisoned in the penitentiary for the term of eight months.

The indictment upon which the conviction was had contained two counts, the first of which was the common-law count for keeping and maintaining a bawdy house, where the defendants were charged, for their own lucre and gain, with keeping and maintaining a certain ill-governed and disorderly house, where men and women, at unlawful times, remained drinking, tippling, whoring, &c.

The second count charged against the defendants that they " did keep and maintain a certain common, ill-governed and disorderly house called and known as the Columbia Opera House, and in the said house did publicly exhibit and show themselves, and cause and procure to be publicly exhibited and shown for money, as well themselves as divers other persons,

men and women; whose names are to the jurors aforesaid unknown, in various impudent, lascivious, lewd, wicked, scandalous and obscene groupings, dancings, movements, attitudes, positions, postures and songs, to the manifest corruption of the morals as well of the youth as other good and worthy citizens of the state of New York, in open violation, of decency and good order, to the great damage and common nuisance of the people assembled in said house, and of those passing and re-passing along said street, and those inhabiting, and being to the evil example of others in like manner offending, contrary to the form of the statute," etc.

The evidence showed that Berry was the proprietor of the Columbia Opera House, February 11, 1878. It was a theater licensed by the mayor of New York city as a place of amusement. Moses S. Meeker and W. M. Waite, detectives in the employ of the "Society for the Prevention of Crime," testified to having visited the theater, and that they saw certain plays produced upon the stage, which they stated to be of an immoral character ; also that they drank with some of the actresses in the green-room of the theater, at which time their conduct was lewd, and their costumes indecent. Several persons residing in the vicinity of the opera house complained of having been disturbed by noises proceeding from the opera house during the performances. Upon the part of the defense, the police captain of the precinct, in which the opera house was located, as well as several of his officers, testified to having visited the opera house, witnessed the performances, and that they never saw any disorderly or immoral conduct ; that the theater was well conducted, the plays moral, and the audience respectable. Several citizens, property owners, residing with their families in the neighborhood of the opera house, some of whom frequented the theater, characterized the plays as moral, the costumes worn by the performers the ordinary ballet costumes, and testified that the only noise was the applause usually attendant at all theatrical performances, and did not disturb the peace and quiet of the neighborhood.

Evidence of witness Ada M. Travers, was admitted on behalf of the prosecution, under objection and exception, showing that the frequenters of said opera house, in going to and

from the same, disturbed the peace by noises and profane lan-
guage upon the highway in the neighborhood.

Rust, a witness for the prosecution, was also permitted, under
objection and exception, to testify as to the effect of the noise
on the neighborhood and on himself, and to state that it was
an "annoyance." Kraft, a witness for the prosecution, was per-
mitted, under exception, to characterize the noises as "most
infernal and unearthly," and he subsequently described them
as "shrieks, yells and howls."

The other exceptions by the plaintiff in error to the admis-
sion of testimony, are set forth in the opinion of the General
Term.

Counsel for plaintiff in error submitted to the court, in ad-
dition to other requests to charge, which are fully set forth in
the opinion of the General Term, the following:

1. Before the jury can convict the defendant, they must
find that the evidence conclusively establishes that he main-
tained a common, ill-governed, disorderly house, to the general
nuisance of the people of the state of New York, as charged in
the indictment.

The court so charged.

11. The society for prevention of crime, not being, at the
time of the commencement of this prosecution, or at any time
theretofore, an incorporated body, but merely a voluntary asso-
ciation, had no lawful authority to appoint detectives, and
empower them to induce commission of offenses against the law
in order that the offenders might be punished.

The court refused so to charge, to which exception was taken.

12. The defendant is entitled to the benefit of every pre-
sumption in his favor, arising from the legitimate character of
his house, as indicated by his license, and to the benefit of every
reasonable doubt, arising, either from the evidence, or from the
character of the witnesses and their relation, in the eye of the
law, to the case, which the jury may entertain; and if, upon the
whole case, they have a fair and reasonable doubt, he should be
acquitted.

The court so charged.

At the close of the testimony, the plaintiff in error claimed
a verdict of acquittal, under the first count of the indictment, on

the ground that there was no evidence to sustain it; and under the second count, on the ground that the offense therein charged was a common law offense only, and the count concluded, " against the statute," and was therefore erroneous.

The court allowed the case to go to the jury on both counts, holding, as to the objection to the second count, that the words, " contrary to the statute," &c., were to be treated as surplusage.

The jury, after being charged, retired to deliberate; and, upon returning to the court, asked for further instructions, and then announced their inability to agree upon a verdict.

The Recorder, addressing the jury, said : " I would discharge you, but under my sense of duty I can not . . . . After a few days it has been presented to you, and thoroughly argued and tried, witnesses were examined and cross-examined. I do not care what you find: guilty or not guilty, it is perfectly immaterial to me. But I say it is my duty, if you can not agree, that I shall lock you up for the night; that is a most ungrateful thing for me to do to any jury. As I told you on Friday night, I do not want you detained from your families, and I do not now. If you can not agree, I shall order an officer to take you in charge. I will give you fifteen minutes, and see if you can arrive at a conclusion."

The jury again retired from the court to deliberate, returning, in a few minutes, with a verdict of " Guilty."

Counsel for the plaintiff in error excepted to the remarks of the Recorder to the jury.

*William F. Kintzing* and *John R. Fellows*, of counsel, for plaintiff in error.—The court erred in refusing to permit prisoner's counsel to ask the witness, Meeker, in what states he had been pursuing the business of an informer. It is for the jury alone to say how much credit a witness is entitled to. 1 *Phillips Ev.* 5 ; 1 *Greenl. Ev.* 10 ; *Starkie Ev.* 80. For the purpose of discrediting a witness, he may be asked, upon cross-examination, as to specific acts. 1 *Greenl. Ev.* § 456 ; Real *v.* People, 42 *N. Y.* 280 ; La Beau *v.* People, 34 *Id.* 223. The evidence was competent. Great Western Turnpike Co. *v.* Loomis, 32 *N. Y.* 127. The court held the question " immaterial;" there

was no claim of privilege by the witness.* The jury should be instructed to receive the evidence of an informer with the greatest caution and distrust. Commonwealth v. Downing, 4 *Gray*, 29. And the greatest latitude is allowed in the cross-examination of an informer, and the most searching questions are permitted, in order to test his veracity. Lee v. State, 21 *Ohio*, 151. The court erred in permitting the witness Travers to testify to acts and language of persons on the street while going to the theater, also to insults offered to her by some of the performers upon the street. The alleged acts of disorder were not brought home to the knowledge of the plaintiff in error; they occurred upon the public street and in his absence. Commonwealth v. Davenport, 2 *Allen*, 299. The keeping of a disorderly house must be shown as a fact and not by evidence of reputation. State v. Foley, 45 *N. H.* 466. It is therefore, not competent to prove that the house was a matter of complaint in the neighborhood. Commonwealth v. Stewart, 1 *Serg. & Rawle* (Pa.), 342, and authorities there collated; see Rex v. Rogier, 1 *B. & C.* 272; Commonwealth v. Hopkins, 2 *Dana*, 418; Overstreet v. State, 3 *How.* (Miss.) 328. The court erred in not directing a verdict of not guilty. It is true if there is one good count in the indictment, the conviction will be upheld, provided the counts are for the same offense, and there be sufficient proof. People v. Polinsky, 11 *Hun*, 390. The first count here was for a common nuisance, a bawdy house; the second count was for a common nuisance, but a different species, viz., disorderly house. Bishop treats them as distinct offenses, although classing them all under the head of nuisance. 1 *Bishop Cr. Law*, chap. 65, § 1083, chap. 68, § 1106. It is true mere "surplusage" will not vitiate an indictment. People v. Jackson, 3 *Hill*, 94, and cases there cited. But the rule at common law that statutory offenses must be pleaded with a statutory conclusion was imperative. 1 *Wharton Crim. Law*, § 411. The offense against plaintiff in error, if any, was a common law offense; the count should have so concluded. The provision of the Revised Statutes that

* As to question of privilege, see People v. Abbott, 19 *Wend.* 192; Brandon v. People, 42 *N. Y.* 265; Brown v. Kimball, 25 *Wend.* 259; People v. Bodine, 1 *Den.* 281; Southard v. Rexford, 6 *Cow.* 254; *Roscoe's Crim. Ev.* 307; People v. Lohman, 1 *N. Y.* 379.

omissions on indictments, etc., shall not be fatal when they do not tend to the prejudice of the defendant (3 *R. S.* 6th ed. 1022, § 54), is applicable. 1 *Wharton Crim. Law,* §§ 401, 414. The court erred in refusing to charge the second request. The mayor, who is empowered to grant a license, also had the power to revoke it, and, in the absence of any complaint, it is *prima facie* evidence that the defendant kept and maintained a morally proper and well governed house. *Roscoe's Crim. Ev.* 7th ed. 802. The court erred in refusing to charge the fourth request. To render an act indictable as a nuisance, it must be inconvenient and troublesome to the whole community, and not merely to individuals. *Hawkins P. C.* chap. 75; 4 *Blackstone's Com.* 166; 1 *Russell on Crimes,* 6 Am. ed. 316; 1 *Bishop Crim. Law,* 5 ed. chap. 64, § 1071; *Roscoe's Crim. Ev.* 7 ed. 793; 2 *Wharton's Am. Crim. Law,* 2392. A house, in law, to be disorderly, must be what is termed a common nuisance. It must affect many, and not a few. Hunter *v.* Commonwealth, 2 *Serg. & Rawle* (Pa.) 298; State *v.* Matthew, 2 *Dev. & Bat.* 424; United States *v.* Jourdine, 4 *Cranch C. Ct.* 338; Stewart *v.* Commonwealth, 1 *Serg. & Rawle* (Pa.) 342; *Bishop's Cr. Law,* chap. 68, § 1106; 2 *Wharton's Am. Cr. Law,* 7 ed. 2378. An indictment will not lie for that which is a nuisance only to a few inhabitants of a particular place. Rex *v.* Lloyd, 4 *Esp.* 200; State *v.* Wright, 6 *Jones* (N. C.) 25; State *v.* Hitchcock, 7 *Ired.* (N. C.) 52; State *v.* Evans, 5 *Id.* 603. The trade in which the plaintiff in error was employed was a lawful one, and the jury, by finding him guilty, have established a precedent in the community fatal to the exercise of many professions which the public good requires to be carried on, and would deprive the defendant of the whole property which he vested in the establishment. People *v.* Baldwin, 1 *Wheeler,* 279; People *v.* Rowland, 1 *Wharton Cr. Law,* 286; Prescott's case, 2 *City Hall Rec.* 161; Boyd's case, 3 *Id.* 134; Prout's case, 4 *Id.* 87; People *v.* Barnesciotta, 10 *Hun,* 137; People *v.* Jacobowsky, 6 *Id.* 524. A house of prostitution is, *"per se,* a common nuisance. Not so with a regularly licensed place of theatrical entertainment; that can only become so by misconduct of those concerned in its management. The court erred in refusing to charge the fifth request.

VOL. I.—4

It would be impossible to manage, or conduct any theater and suppress the applause and outcries, etc., such matters being the legitimate and ordinary attendants upon theatrical entertainments. The licensing of such a place by the authorities, is with the full knowledge that the noises proceeding from the theater, will be objectionable to some. The court erred in refusing to charge the sixth and seventh requests. A person may be convicted upon the sole uncorroborated testimony of an accomplice, and the question of the credibility of the witnesses belongs to the jury. Evans v. People, 40 N. Y. 1; People v. Costello, 1 Den. 83; Wharton Am. Cr. Law, 301; 1 Chitty Cr. Law, 904; Commonwealth v. Downing, 4 Gray (Mass.) 29. Still, it has been the practice in England, and this country, to advise a jury to acquit, it being unsafe and dangerous to convict upon the uncorroborated testimony of an "accomplice." 1 Wharton Cr. Law, § 785, and authorities there collated; 1 Greenl. Ev. 426, § 380. The jury should be instructed to receive his evidence with the greatest caution and distrust. Commonwealth v. Downing, 4 Gray (Mass.) 29. The rule that an error committed upon a trial, may be overlooked, when the party complaining was not prejudiced thereby, is only applicable in cases where the error could by no possibility have produced injury. People v. Stokes, 53 N. Y. 164; People v. Coleman, 58 Id. 555. The remarks of the recorder to the jury, about locking them up for the night, etc., and giving them fifteen minutes to see if they could arrive at a conclusion, were improper and fatal to the verdict.

Benjamin K. Phelps, district attorney, and Daniel G. Rollins, assistant district attorney, of counsel, for defendant in error.—The court did not err in admitting in evidence, proof as to what occurred in the house, although not in the immediate presence of the defendant. The testimony was competent as tending to show the character of the house, without regard to the presence of the defendant. It would have been equally competent, if the defendant had not been in the house at all that night, if the fact of his proprietorship had been otherwise shown. Reg. v. Stephens, Law Rep. 1 Q. B. 702, 706; 1 Bishop's Crim. Law (6th ed.) § 1096; Lowenstein v. People,

54 *Barb.* 300; Ross v. Commonwealth, 2 *B. Munr.* 417. The court did not err, in not permitting prisoner's counsel, in cross-examining the witness Meeker, to ask him in what other state he had "pursued this business" (meaning informer). "The court in which a case is tried may, in the exercise of its discretion, exclude disparaging questions, not relevant to the issue, on cross-examination of a witness, although put for the avowed purpose of impeaching his general credit, and this may be done on the objection of the party." G. W. T. Co. v. Loomis, 32 *N. Y.* 127; La Beau v. People, 6 *Park.* 371, 394, 397; 34 *N. Y.* 223. The testimony taken upon the part of the prosecution, that the occurrences in the house annoyed the neighborhood, was competent and relevant. People v. Carey, 4 *Park.* 238. The court properly refused to direct a verdict of not guilty, as the count in the indictment was not in the least affected by the conclusion "against the form of the statute." King v. Mathews, 5 *Term Rep.* 162; People v. Conger, 1 *Wheel.* 448. The court properly refused, to charge that the fact, that the theater had not been complained of before the mayor, was *prima facie* evidence that it was not a disorderly house, etc. People v. Baldwin, 1 *Wheel.* 279. The court did not err, in refusing to charge that there could be no conviction of nuisance unless there be an annoyance by noise and disturbance to the whole neighborhood. The place may be a nuisance, without any noise at all, simply as being injurious to public morals. Barnesciotta v. People, 10 *Hun,* 137; Jacobowsky v. People, 6 *Id.* 524.

The following opinion was delivered at General Term.

BY THE COURT.—INGALLS, J.—The plaintiff in error was convicted of the misdemeanor of keeping a disorderly house. Upon the trial, a great number of witnesses were examined, who differed widely in their statement of facts. The testimony, adduced in support of the prosecution, established the offense charged in the indictment, by showing that the Opera House, so called, had been so conducted by the prisoner that it became very disreputable, the conduct of the inmates being grossly indecent, and calculated to corrupt the morals of all who visited the house as a place of amusement, and by the noises and tumult

created therein, disturbed the peace and quiet of the community. The evidence, on the part of the prisoner, was in conflict with that adduced by the people, and wholly irreconcilable therewith. It was the province of the jury, to settle the disputed question of fact, which they have done, in favor of the prosecution, and their verdict is not so far unsupported by evidence, as to justify a reversal upon that ground.

The plaintiff in error insisted upon certain exceptions, taken during the progress of the trial, which we will proceed to consider. No error was committed in excluding the inquiry addressed to the witness, Meeker, as to whether he had acted in the capacity of informer in other states.* 1st. This inquiry was collateral to the main question involved in the trial, and hence it was discretionary with the court, how far it should be indulged. G. W. T. P. Co. *v.* Loomis, 32 *N. Y.* 127; La Beau *v.* People, 6 *Parker*, 371; 34 *N. Y.* 223. 2nd. The examination allowed upon that subject, sufficiently presented the attitude of the witness in that respect, and the prisoner had the benefit thereof before the jury. The law does not compel the court to go so far in allowing such examination, as, in effect, to transfer the trial from the prisoner to the witness. The only legitimate purpose of such an inquiry, in regard to a witness, is to exhibit his character fairly to the jury, so that they may place a proper estimate upon his testimony. Error was not perpetrated by allowing the witness, Ada M. Travers, who resided in the immediate vicinity of the Opera House, to testify in regard to the disturbance, occasioned by the noises in such house, as that was one of the elements involved in the inquiry, whether the prisoner kept a disorderly house, and such evidence bore upon that question. The nature and extent of the examination upon that subject, must necessarily be left, in a great measure, to the discretion of the court, and nothing short of a clear abuse of such discretion, should induce the appellate court to interfere. People *v.* Carey, 4 *Park.* 238.

The same reasoning applies to the exception taken to the ruling of the court, in allowing the evidence of Joseph S. Rust, upon the same subject. The case of the prisoner could not have

* This question was put upon cross-examination, and disallowed, on objection of prosecution.—REPORTER.

been prejudiced by the ruling of the court, refusing to allow the witness, Thomas J. Kennedy, to answer whether he saw anything indecent or improper in the performance which he witnessed. He was allowed to state fully all that he did see or hear. And he stated that he saw nothing wrong. Certainly, it ·was not necessary for him to repeat his evidence in a more objectionable form. The same view may be taken of the decision, in regard to the witness Ely.

The printed rules and regulations, which were posted in the house, were properly excluded. The prisoner was not tried for a violation of his profession, but for wrongful acts performed in his house, either in his presence, or by his procurement. Such rules could be of no account, unless observed, and, if they have been, there could be no ground of complaint.

The refusal to allow the witness Barnard to testify that he had witnessed the plays "Mock Modesty" and "Silken Meshes" at other theaters was not error. . 1st. The witness was allowed to describe all that he discovered at the opera house in question. 2d. If such plays were presented at other places in a manner equally objectionable, and tolerated, it could not excuse the prisoner, or palliate his offence.

The refusal to strike out the answer of the witness Kraft, in which he characterized the noises which he heard "as infernal," when taken in connection with the description which he subsequently gave of them, could not have prejudiced the prisoner. Even an erroneous ruling does not call for a reversal, when the. court can perceive that no injury resulted from it.

The decision of the court in regard to the form and sufficiency of the indictment, assailed as it was for the first time upon the trial, can be sustained. Case *v.* People, 21 *Hun*, 504, and cases there cited ; Rex *v.* Mathews, 5 *T. R.* 162; People *v.* Conger, 1 *Wheeler*, 448. The court properly refused to charge at the request of the prisoner's counsel the following proposition : 2d. "The granting of the license to give theatrical entertainments as provided by law by the mayor, the payment and acceptance of the additional license fee to the House of Refuge, coupled with the evidence of John D. Hardy, the clerk to the mayor, that no complaint has ever been made against the defendant's government of the premises referred to

in the testimony, since the granting of such license, nor any objections presented to its continuance, *prima facie*, is evidence that the defendant kept and maintained a morally proper and well-governed house." The granting of such license could establish nothing in regard to the question tried—whether the house was rendered disorderly by the noisy and indecent conduct of the inmates of the establishment. The prisoner was not indicted and tried for keeping such house without a license, but rather for keeping a house which was rendered disorderly by base conduct, even though licensed to maintain an opera house. Again, the court gave the prisoner all the benefit of a license in the following intimation to the jury : "I charge you, gentlemen, as the law controlling your government, the third proposition requested by the counsel for the accused, as follows : 3d. " The keeping and maintaining a house for theatrical exhibitions and entertainments is a legitimate and proper business and pursuit ; and when kept and maintained in pursuance of the license required by law, is presumed to be an orderly and well governed house, and such presumption can only be destroyed by the most conclusive proof to the contrary."

No error was committed by refusing to charge the following proposition at the request of the counsel of the prisoner :

4th. " Where an indictment charges that a place of licensed resort, an entertainment is kept in a disorderly and ill-governed manner, to the common nuisance of the people of the State of New York, and citizens in that neighborhood residing, the evidence must show conclusively that such place is a common, continuing and general nuisance to the neighborhood in which it is situated, and the citizens generally therein resident. Proof that certain of the neighbors only, were disturbed by noises and acts emanating from such place, would constitute merely a private nuisance, and not a public one, and would, therefore, not be punishable criminally." Barnesciotta *v.* People, 10 *Hun,* 137 ; Jacobowsky *v.* People, 6 *Id.* 524.

The court properly declined to charge the following. 5th. " The mere noises and outcries incident to the usual performances of plays, in a place of theatrical entertainment, duly licensed, coupled with the noises incident to the applause of the audience, are not matters in themselves sufficient to constitute a public

nuisance, such matters being the legitimate and ordinary attend-
ants upon theatrical entertainments, and if any persons, residing
adjacent to such place, are disturbed and annoyed by reason
thereof, the proper remedy would be in a court of equity, by
injunction, and not in a criminal court, by indictment."

It seems to us, that the third proposition, which was charged
as requested by the prisoner's counsel, embraced all that the de-
fense could properly claim under this request. The court could
not be required to repeat or to charge propositions which were
merely speculative.

The following requests were properly disposed of.

6th. " The evidence of the two witnesses, Meeker and Waite,
shows them not only to be participants in, but promoters of the
alleged immoral acts, testified to, by them ; they are, therefore,
in the eye of the law, accomplices, and the jury should require
their evidence to be corroborated in all material particulars,
before they accord to it credit and belief."

7th. " In addition to the relation of the witnesses, Meeker
and Waite, as accomplices, the fact that they were the hired
agents of the society instigating this prosecution, and paid for
the procurement of the evidence which they testify to, having,
in great measure, themselves created, are matters which go
strongly to the credibility of each of them, and the jury should
weigh their evidence with great care, and even suspicion."

It will be observed that the court qualified his refusal to
charge as requested.

The following proposition of the prisoner's counsel, was
properly refused by the court :

8th. " The fact that the society instigating this prosecution,
did not proceed, by way of complaint, before the judicial officers
mentioned in the act of 1836, to revoke the license of defendant,
and thus, perforce, abate what they alleged to be a public
nuisance, is a circumstance to be taken into consideration by the
jury, against the prosecution."

The court charged, as requested by the prisoner's counsel,
the following :

9th. " If the jury, from the majority of the neighbors who
have testified, and from the evidence of the numerous police
officers, who, in their official and individual relations, visited the

place, charged to be a common nuisance, in the indictment, find that it was free from disturbances, disorders and other incidents of ill government, and do not find the evidence as to immoral acts, given by the witnesses, Meeker and Waite, fully corroborated, they should acquit the defendant."

10th. "Even if the acts and conversations, testified to by Meeker and Waite, were, in reality, recitals of truth, and the jury fully believed them, the defendant can, in no manner, be held responsible for their occurrence and utterance, unless the evidence clearly shows that he knew of, and consented thereto; and, if the jury have a reasonable doubt that he did so know and consent, then he is to be acquitted of all blame, by reason thereof."

The court properly refused to charge the eleventh proposition, as requested by the counsel for the prisoner.

The twelfth proposition was charged as requested.

In determining whether the court erred in the instructions to the jury, or by refusing to charge as requested, the entire charge must be examined and considered, with a view to ascertain whether the plaintiff in error has any substantial ground of complaint.

In regard to the exception taken to the remarks of the court to the jury, after they returned for further instructions, it is sufficient to say that the exception was too general to avail the prisoner, as it can hardly be pretended, that no portion of such remarks were proper. We discover no error which will justify a reversal of the judgment, or the granting of a new trial, and the conviction must be affirmed.

DAVIS, P. J., concurs; BRADY, J., dissents.