The President, Directors and Company of the Third Great Western Turnpike Road Company, Appellants, v. Edwin D. Loomis, Respondent.

The court in which a cause is tried, in the exercise of its discretion, may exclude disparaging questions, *not relevant to the issue*, on the cross-examination of a witness, though put for the avowed purpose of impairing his general credit; and this may be done on the objection of the party, without putting the witness to his claim of privilege.

In the exercise of this discretion, such questions should be allowed, when there is reason to believe it may tend to promote the ends of justice; but they may properly be excluded, when a disparaging course of examination seems unjust to the witness, and uncalled for by the circumstances of the particular case.

On questions of this nature, the decision of the original tribunal is not subject to review, unless in cases of manifest abuse or injustice.

The action was for the recovery of toll by the turnpike company, against the defendant, who repeatedly passed the plaintiff's toll-gate, and refused to pay the rates prescribed by law.

The plaintiff recovered. The judgment was reversed, on the ground that the defendant was not permitted, on the cross-examination of the principal witness, to put questions irrelevant to the issue, but tending to degrade the witness; the avowed purpose of the inquiries being to show that he was unworthy of credit. The questions were excluded as irrelevant, on the objection of the plaintiff, without any claim of privilege by the witness. The judgment of reversal was affirmed by the General Term of the sixth judicial district, on the authority of the case of *The People* v. *Blakely* (4 Park. C., 176.)

The present appeal was taken from the judgment of affirmance in the Supreme Court.

*S. T. Fairchild*, for the appellants.

I. There was no error in overruling the questions put to the witness, Winne, on his cross-examination.

1. The questions were immaterial to the issue. If the witness had taken illegal toll, that fact could not affect the right of the plaintiffs to collect of the defendant his toll.

2. The extent of a cross-examination upon matters immaterial to the issue, is in the discretion of the court.

There is no case which holds that it is error to exclude evidence immaterial to the issue offered upon cross-examination, for the purpose of discrediting the witness.

There are cases where such evidence has been received (*Rex* v. *Edwards*, 4 Term., 440; *Howard* v. *City Fire Ins. Co.*, 4 Denio, 502), and there are cases where such evidence has been rejected (*Rex* v. *Pitcher*, 1 Carr & P., 84; *Macbride* v. *Macbride*, 4 Esp., 242; *People* v. *Genung*, 11 Wend., 18; *Ward* v. *People*, 6 Hill, 144); but there is no case where a judgment has been reversed or a new trial granted for the exclusion or admission of such evidence, until the case of *People* v. *Blakely* (4 Park. Cr.), which is in effect under review upon this appeal.

The true rule is laid down in 1 Carr. & P., 75, *n.:* "In practice, the asking of questions to degrade the witness is regulated by the discretion of the learned judge in each particular case;" and in 1 Greenl. Ev., § 459: "The examination being governed and kept within bounds by the discretion of the judge."

II. The certificate of the county clerk was properly rejected.

1. The absence of commissions on file in his office was no evidence that no inspectors had been appointed by the governor under plaintiffs' charter.

(*a.*) The county clerk had not the legal custody of such commissions. A commission is "a writing from proper authority, given to *a person* as his warrant for exercising certain powers or the performance of any duty, whether civil, ecclesiastical or military." (Webster's Dict., "commissions," "3.") They need not be sent to the county clerk (1 R. S., ch. 5, title 6, § 16), and when so sent, they are not directed to be filed or deposited in his office, but are to be delivered to the officer.

(*b.*) Even if no commissions were ever delivered or sent, a valid appointment may have been made by the nomination of the officer, and the signing of a commission. The appoint-

ment is complete without the transmission of a commission. (*Marbury* v. *Madison*, 1 Cranch, 137.)

2. The absence of any oaths of office on file in the county clerk's office, was no evidence that no inspectors had been appointed under plaintiff's charter, or that none were acting as such.

(*a.*) The oaths of office of inspectors under the charter are to be filed in the office of the secretary of State. (1 R. S., ch. 5, title 6, § 27, subs. 1 and 6.)   The authority of such inspectors is not "limited to any particular district or county," nor are their duties "local," but their authority and duties extend throughout the line of plaintiffs' road, nor is "their residence in any particular district prescribed by law."   The coincidence of there being five inspectors and of the road's passing through five counties, is accidental, as in the same volume where plaintiffs' charter is printed, are found charters providing for three or five inspectors, irrespective of the number of counties through which the roads pass.

(*b.*) The omission of the inspectors to take and file their oaths of office would not invalidate their appointment or render them incompetent to act. (*People* v. *Cook*, 14 Barb., and cases cited.)

3. The certificate of the county clerk would not show but that there were inspectors of the road, under the charter, having jurisdiction of the road, whose residences were in other counties than the county of Madison.

III. The evidence of the inspection of plaintiffs' road, and of the condemnation thereof by the witness, Root, was properly excluded.

1. There was no evidence that the plaintiffs had refused or neglected to obtain the appointment of inspectors under their charter, or that there were none in office, or that they had refused to serve.   The witness, Root, therefore, was not shown to have jurisdiction. (1 R. S., ch. 18, title 1, § 40.)

2. The witness, Root, was an inspector of *turnpikes and plank roads*, appointed in pursuance of ch. 210, Laws of 1847, holding his office during pleasure.   Such inspectors have no jurisdiction of any roads except those formed under

that act. (Laws of 1847, ch. 210, § 47.   It is the inspectors of *turnpikes*, appointed under ch. 45 of Laws of 1848, and who hold their offices for two years, who have jurisdiction of roads formed under special charters, in the cases mentioned in § 46 above cited. (*Same* v. *Phillips.*)

IV. The justice properly sustained the objection to the evidence offered of the admissions of the president of the plaintiffs. (2 R. S., part 3, ch. 7, title 3, § 80.) .

*D. W. Cameron*, for the respondent.

I. The justice erred in sustaining plaintiffs' objections to the questions put by defendant to the witness, Winnie, on his cross-examination.

It was distinctly stated that the evidence was offered for the purpose of testing the credibility of the witness, and for this purpose it was clearly competent.

If the witness chose to answer any criminating question, he may, and it shall be received as evidence. (6 Cow., 254, 260; 19 Wend., 195; 4 Wash. C. C., 729; 4 Conn., 408, 409.)

The answer shall be taken in evidence, though it go to show the witness' official misconduct. (1 Johns., 498.)

So, to discredit him, by showing that he had been guilty of felony. (6 C. H. Rec., 45.)

The question may, if it be pertinent to any matter directly or *collaterally* in question, be put, and the witness left to his election.

When any question tending to affect the credibility of a witness is put, upon a cross-examination, neither the opposite party nor the court has a right to object.   The *witness alone* may put himself upon his privilege, if the answer will criminate him. (*The People* v. *Abbott*, 19 Wend., 195, and authorities there cited, and 569; *Brown* v. *Kimball*, 25 Wend., 267; 4 id., 229; *People* v. *Bodine*, 1 Denio, 281, 314; 4 id., 402; Barb. Crim. Law, 400; *Southard* v. *Rexford*, 6 Cow., 254; Roscoe's Crim. Ev., 307; 1 Comst., 379; C. and H. N. Phil. Ev. [ed. 1843], 742, 747, 419; C. and H. N. Phil. Ev. [ed. 1850], 749; 3 Hill, 564; 2 Cow. Treat. [3d ed.], 443, 444; Chitty on Bills, 675, and cases cited.)

In the case of *Ward* v. *The People*, the question was precisely similar to the one under consideration. The Supreme Court sustained the objection on the sole ground that the testimony was not offered for the special purpose of impeaching the witness' credibility; the court properly holding that upon the question they were trying, the evidence was immaterial. (3 Hill, 395.)

The majority of the court of errors sustained the ruling on the same ground, viz.: That the object of the testimony should have been stated.

Senator Foster, however, in the same case, holds that the evidence was competent for impeachment, *though the ground was not stated*, and that the witness only could claim his privilege. (6 Hill, 144, 147.)

The fact that the evidence was only offered *as to the witness' credibility*, makes the rule in the last case fully sustain this respondent's position.

II. The justice erred in not allowing defendant's motion for a nonsuit.

The charter provides that toll-gatherers shall be appointed, whose duties shall be to collect and receive of and from all persons using the said road, at either of the gates, the toll hereinafter mentioned. (See plaintiff's charter, Sess. Laws 1803.)

III. The justice erred in rejecting the certificate of the county clerk offered by defendant.

IV. The justice erred in rejecting the testimony of the witness Root, showing that he had inspected the plaintiffs' road, upon due complaint being made, and ordered the gate in question to be thrown open.

V. The justice erred in refusing to allow the defendant to show that said justice was the keeper of a public grocery or tavern, and engaged in the sale of strong and spirituous liquors contrary to the provisions of the statute.

The question is one which goes to the jurisdiction of the justice, and may be raised at any time during the course of the proceedings.

Before an issue has been joined in a cause, this question may be raised and a witness sworn to show such want of jurisdiction. (Opinion of Bronson, J., 7 Hill, 77.)

Porter, J.   If the judgment of the court below be upheld by the sanction of this tribunal, it will embody in our system of jurisprudence a rule fraught with infinite mischief.   It will subject every witness who, in obedience to the mandate of the law, enters a court of justice to testify on an issue in which he has no concern, to irresponsible accusation and inquisition in respect to every transaction of his life, affecting his honor as a man or his character as a citizen.

It has heretofore been understood that the range of irrelevant inquiry, for the purpose of degrading a witness, was subject to the control of the presiding judge; who was bound to permit such inquiry when it seemed to him, in the exercise of a sound discretion, that it would promote the ends of justice, and to exclude it when it seemed unjust to the witness, and uncalled for by the circumstances of the case.

The judgment now under review was rendered, on the assumption that it is the absolute legal right of a litigant to assail the character of every adverse witness, to subject him to degrading inquiries, to make inquisition into his life, and drive him to take shelter under his privilege, or to self-vindication from unworthy imputations, wholly foreign to the issue on which he is called to testify.

The practical effect of such a rule would be, to make every witness dependent on the forbearance of adverse counsel, for that protection from personal indignity which has been hitherto secured from the courts, unless the circumstances of the particular case made collateral inquiries appropriate. This rule, if established, will be applicable to every tribunal having original jurisdiction.   It will perhaps operate most oppressively in trials before inferior magistrates, where the parties appear in person, or are represented by those who are free from a sense of professional responsibility.   But it may well be questioned whether, even in our courts of record, it

would be safe or wise to withdraw the control of irrelevant inquiry from the judge, and commit it to the discretion of adverse counsel. The interposition of the court has often been necessary to protect witnesses from the rigor of examinations, conducted on the supposition that they were entitled to such protection. When this power of protection is withdrawn, is it to be expected that counsel, deeply enlisted for their clients, and zealous to maintain their rights, would feel bound to exercise toward witnesses a forbearance which the courts themselves refuse? There is much diversity of opinion, even among eminent members of the profession, as to the measure of obligation imposed upon counsel, by the implied pledge of fidelity to the client. This could not be more strikingly illustrated than by the atrocious but memorable declaration of one of the leading lawyers of England, on the trial of Queen Caroline: "that an advocate, by the sacred duty which he owes his client, knows, in the discharge of that office, but one person in the world, that client, and none other. To save that client by all expedient means, to protect that client, at all hazards and cost to all others, and, among others, to himself, is the highest and most unquestioned of his duties; and he must not regard the alarm, the suffering, the torment, the destruction, which he may bring upon any other." (1 Brougham's Speeches, 63.) Such a proposition shocks the moral sense, but it illustrates the impolicy of divesting the presiding judge of the power to protect witnesses from irrelevant assault and inquisition. From the nature of the case, he is in a position and frame of mind, more favorable than that of counsel, to arrive at a safe and impartial conclusion. The balance of justice should be held as steady and even between the witness and the parties, as between the opposing litigants, and the rights of neither should be committed to the absolute discretion of counsel.

It is believed that the practice, on this subject, which has heretofore prevailed in this State, rests on sound principle, and is abundantly fortified by authority. Its propriety seems to have been always recognized in the English courts, and

the judges have never hesitated, at *nisi prius*, to exercise a liberal discretion in the admission or exclusion of irrelevant inquiries tending to degrade the witness, according to the varying circumstances under which the offer was made.

No better illustration of this can readily be found than is furnished by a comparison of three of the reported decisions of Lord Ellenborough, "that great master of the law of evidence," as he is designated by Phillips and Roscoe. In the case of *Frost* v. *Halloway*, the bearing of the witness was such, that he not only permitted an inquiry whether he had not been tried for theft, but threatened to commit him if he refused to answer the question. (1 Phillips, Cowen & Hill's ed., 283, note.) In the case of *Millman* v. *Tucker*, when a witness was asked by Lord Erskine if he had not been imprisoned for forgery, he gave permission to the witness to answer the question if he felt it due to himself, but advised him not to do so, and declared that if he himself had been asked such a question, he should have refused to answer "for the sake of the justice of the country, and to prevent such an examination." (Peake's Additional Cases, 222.) In the case of *Rex* v. *Lewis*, the prosecutor was asked on cross-examination if he had not been in the house of correction. Lord Ellenborough at once interposed and prohibited the inquiry, on the ground that witnesses engaged in the discharge of a legal duty should not be subjected to improper investigation. (4 Espinasse, 226.)

In the leading case of *Spenceley* v. *De Willott*, as in the case at bar, the disparaging question was overruled, without any objection by the witness or any claim of privilege. In that case, as in this, the avowed object of the defendant's counsel was to discredit the witness. The defendant's counsel declared it to be their purpose, to avail themselves of the answer if affirmative, and if negative, to contradict the witness. Lord Ellenborough excluded the question, on the ground that it called for an answer, which, if affirmative, would be irrelevant, and if negative, would not be open to contradiction. At his instance, for the purpose of setting the practice at rest, the decision was reviewed on bill of excep-

tions, and the exclusion of the question was sustained by all the judges. (7 East, 108.)

Since that decision, we find no case in the English courts, in which a new trial has been granted for the exclusion of disparaging questions · irrelevant to the issue; though since that time, as before, the judges at *nisi prius* have continued to exercise their discretion by permitting such collateral inquiries when the ends of justice seemed to demand it, and in all other cases excluding them in justice to the witnesses. The existing rule on that subject in England, is undoubtedly that stated in the note subjoined to the report of the case of *Rex* v. *Pitcher*. "In practice, the asking of questions to degrade the witness is regulated· by the discretion of the learned judge in each particular case. (1 Carr. & Payne, 85.)

Such has been the practice in this State hitherto, and it has received the sanction of the General Term in the fifth judicial district, in the case of the present plaintiff against Phillips, which was precisely similar to that now under review.

The judgment in the present case was rendered on the authority of a recent decision in the sixth judicial district, in the case of the *People* v. *Blakely* (4 Parker, 176). That is the only case found in our State reports, in which a judgment has been reversed on the ground of the exclusion of inquiries as to particular transactions, tending to degrade the witness, but wholly irrelevant to the issue. A careful and deliberate examination of the question, aided by the learned and able opinion delivered in that case, has failed to bring us to a conclusion in harmony with that of the court below.

Much confusion and conflict in the treatment of this sub-·ject is apparent in the English text books, as well as our own. This is.mainly due to the fact, that the question usually arises only at *nisi prius*. The rulings of the judges in different cases, being on a mere question of practice at the trial, are not the subject of review, and are necessarily acquiesced in by the parties. The decisions, in these, as in all other cases, resting in mere discretion, have been of course inharmonious, according to the views of different judges, and the varying circumstances of the cases in which the question was presented. The text

writers, as well as the judges, differ in their views as to the rules which should control the exercise of this discretion; some being predisposed in favor of the liberal allowance of irrelevant crimination, and others preferring the practice of rigid exclusion.

Thus, two writers, as acute and discriminating as Roscoe and Peake, cite respectively the case of *Yewin*, in 2 Campbell, and that of *Spencely* v. *De Willott*, in 7 East, as authority for propositions in apparent antagonism. Roscoe regards those cases as establishing the rule, "that questions not relevant may be put to the witness for the purpose of trying his credibility." (Roscoe's Crim. Ev., 181.) Peake quotes the same cases, as superseding his elaborate discussion, in the text of the first edition of his work, as to the right to put such questions, and adds, that "as it may now be considered as settled, that matters wholly foreign to the cause cannot be inquired into from the witness himself, those arguments are now reprinted in the appendix." (Norris' Peake, 204.) But when we reflect that both authors, in what they wrote, had in view the existing practice of England, by which the limits of collateral examination were under the control of the presiding judge, the seeming conflict disappears, and their respective conclusions harmonize with each other, and with the cases on which they rest. It is entirely true, as affirmed by Roscoe, that inquiries on irrelevant topics to discredit the witness, may be permitted on the trial, in the discretion of the judge; and equally true, as affirmed by Peake, that such inquiries may be excluded, without infringing any legal right of the parties. The writers on evidence have endeavored to aid the courts in the exercise of this discretion, with such results as they supposed to be deducible from the various decisions at *nisi prius;* but from the nature of the case, no fixed rule could be devised, defining the right and limiting the extent of irrelevant inquiry, which would be just or safe in universal application.

The opinion in the case of *The People* v. *Blakely*, rests mainly on prior decisions in our own courts, which, when examined and classified, do not seem to us to uphold the present judgment.

In several of the cases cited, the question did not arise. In one of them, the discrediting evidence was received, and its admission was held to be no ground for reversal. (*Howard* v. *City Fire Insurance Co.*, 4 Denio, 502.) In another, the witness answered the disparaging questions; and a new trial was granted, on the ground that the party calling him should have been permitted to give general evidence in support of his character for truth. (*The People* v. *Rector*, 19 Wend., 569.) In a third, the witness claimed his privilege; the judge held that he was not bound to answer, and the court sustained his decision. (*The People* v. *Mather*, 4 Wend., 229.)

In four of the cases cited, the exclusion of the discrediting evidence was held to be erroneous. In neither of them did the witness claim his privilege. In each, the proof offered and rejected was adjudged to be *material and relevant to the issue.* (*Jackson* v. *Humphrey*, 1 Johns., 498; *Southard* v. *Rexford*, 6 Cow., 234; *The People* v. *Abbott*, 19 Wend., 192; *The People* v. *Bodine*, 1 Denio, 281.)

None of these decisions tend to sustain the proposition, that the exclusion of inquiries as to particular transactions, *wholly irrelevant to the issue,* for the purpose of degrading the witness, is cause for reversal by any appellate tribunal.

That the witness was under no obligation to answer the questions propounded in the case at bar, is settled by the decision of this court in the case of *Lohman* v. *The People.* It is there expressly adjudged, that the party is not entitled to an answer to an inquiry tending to disgrace the witness, *unless the evidence would bear directly upon the issue.* (1 Comst., 380, 385.)

If, therefore, the defendant in this case had any cause of complaint, it was, not that he was deprived of an answer to which he was entitled in law, but that he was deprived of the benefit of an irrelevant fact, the truth of which does not appear, and which, if true, the witness was under no obligation to disclose. The office of a court of review is to correct errors in law, prejudicial to the appellant. If the answer was not matter of legal right, the question could properly be excluded unless it was relevant to the issue.

Tiffany. — Vol. V.   18

But it is said that as the question tended to degrade the witness, he alone could take the objection. Strictly speaking, there is no case in which a witness is at liberty to object to a question. That is the office of the party or the court. The right of the witness is, to decline an *answer* if the court sustains his claim of privilege. When the question is relevant, it cannot be excluded on the objection of the party, and the witness is free to assert or to waive his privilege. But when the question is irrelevant, the objection properly proceeds from the party, and the witness has no concern in the matter unless it be overruled by the judge.

The precise issue is, whether the court before which the cause is tried, is authorized, in the exercise of a sound discretion, to exclude inquiries as to particular transactions irrelevant to the issue, and tending to degrade the witness, on the objection of the party, without putting the witness to his election. On this point, we understand the decision in the case of *Ward* v. *The People* to be controlling and decisive. Ward was indicted for larceny. On the trial, the prosecutor was asked in the course of his cross-examination, whether he had not himself stolen the property, which he alleged to have been stolen from him by the prisoner. The question was excluded on the objection of the district attorney. The conviction was sustained in the Supreme Court, on the ground, that if the question had been permitted, the witness would not have been bound to answer it, and even if it had been answered affirmatively, the fact would have been immaterial to the main issue. (3 Hill, 395.) The court of errors affirmed the judgment on the specific ground, that though the witness had not claimed his privilege, the objection was properly sustained, as the inquiry was irrelevant to the issue. (6 Hill, 144, 146.)

Every court having original jurisdiction is authorized to reject evidence on immaterial issues, though objected to by neither party; and if it were otherwise, it would be a reproach to the administration of justice. (*Corning* v. *Corning*, 2 Seld., 97; *The People* v. *Lohman*, 2 Barb., 221.)

If, however, the question were *res nova*, we should have no

difficulty in arriving at the same conclusion. The practice which has heretofore prevailed in this respect has been satisfactory to the community, the bench and the bar. Questions of this nature can be determined nowhere more safely or more justly, than in the tribunal before which the examination is conducted. Justice to the witness demands, that the court to which he appeals for present protection shall have power to shield him from indignity, unless the circumstances of the case are such that he cannot fairly invoke that protection. If the range of irrelevant inquisition be committed to the discretion of adverse counsel, it will be no reparation of the wrong to the witness, that the judgment, in which he has no concern, may be afterward reversed by an appellate tribunal.

It often happens that *leading questions* become appropriate in the course of a direct examination, in eliciting from hostile or unwilling witnesses facts material to the issue. It happens often, too, that the appearance and deportment of an adverse witness—his prevarications, reluctance or apparent bias—the intrinsic improbability of his testimony, or its incongruity with known facts—make it the plain duty of the court to permit searching and disparaging inquiries on matters irrelevant to the issue, for the purpose of aiding the jury in a collateral inquiry as to his credit. In each of these, as in other like cases, involving mere questions of practice, order and decorum, the right and the duty of decision are wisely committed, in this State, as in England, to the sound discretion of the court in which the trial is conducted. Unless there be a plain abuse of discretion, decisions of this nature are not subject to review on appeal.

The proposition that no witness has a right to complain of an opportunity to vindicate his integrity by his own oath, is plausible and specious, but illusory. It ignores the indignity of a degrading imputation, when there is nothing in the circumstances of the case to justify it. It ignores, too, the humiliation of public arraignment by an irresponsible accuser, misled by an angry client, and shielded by professional privilege. Few men of character, or women of

honor, could suppress, even on the witness stand, the spirit of just resentment which such an examination, on points alien to the case, would naturally tend to arouse. The indignation with which sudden and unworthy imputations are repelled, often leads to injurious miscontruction. A question, which it is alike degrading to answer or decline to answer, should never be put, unless, in the judgment of the court, it is likely to promote the ends of justice. A rule which would license indiscriminate assaults on private character, under the forms of law, would contribute little to the development of truth, and still less to the furtherance of justice. It would tend neither to elevate the dignity of our tribunals, nor to inspire reverence for our system of jurisprudence.

In the case now under review, there was no conflict in the evidence. The witness was neither a stranger nor a volunteer. The facts to which he testified, were not only probable in their nature, but within the personal knowledge of the party against whom he was called. No attempt was made to contradict him. There was nothing in his testimony or the relations he sustained to the parties, to deprive him of the benefit of the ordinary presumptions in favor of good character and good faith. If the disparaging questions had all been answered in the affirmative, the jury would not have been justified in discrediting his evidence on the facts material to the issue. But they were wholly irrelevant, and were properly excluded on the trial.

The judgment of the Supreme Court and the County Court, should be reversed with costs, and the original judgment should be affirmed, with an order for restitution.

All the judges concurred.

Judgment affirmed.