THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff in Error, v. FRANCES CRAPO, Defendant in Error.

Where, upon a criminal trial, the accused is offered as a witness in his own behalf, to entitle the prosecution to put to him, upon cross-examination, questions which are irrelevant to the issue and are calculated to prejudice him with the jury, they must, at least, be such as clearly go to impeach his general moral character and his credibility, as a witness. As to whether, even then, the questions would be competent, *quære.*

Upon the trial of an indictment for burglary and larceny, the prisoner, on cross-examination, was asked if he had not been arrested on a charge of bigamy ; this was objected to ; objection overruled. *Held* (FOLGER and EARL, JJ., dissenting), error ; that it did not legitimately · tend to impair the credibility of the witness, and was incompetent for any purpose.

*People* v. *Brandon* (42 N. Y., 265), and *People* v. *Connor* (50 id., 240), distinguished.

The property stolen was about six bushels of wheat. It was proved, on the part of the prosecution, that a small quantity of wheat, of the same kind as that stolen, was found in the pocket of the prisoner by a police officer, who testified that the prisoner said it was a sample " fetched up to sell by," and that he had sold some wheat to S. & G., millers, at W. One of that firm testified that he purchased about six bushels of some man, but did not identify the prisoner as the man. The prisoner, as a witness, denied making the statement as to the wheat, and offered to prove that about that time he had sold wheat at another place. This was objected to, and rejected. *Held* (EARL, J., dissenting), error.

(Argued February 5, 1879 ; decided February 18, 1879.)

ERROR to the General Term of the Supreme Court, in the fourth judicial department, to review an order reversing judgment of the Court of Oyer and Terminer in and for the the county of Oneida, entered upon a verdict convicting defendant in error of the crimes of burglary and larceny.

The facts appear sufficiently in the opinion.

*Watson M. Rogers*, district-attorney, for plaintiff in error. The confession of the prisoner was properly received in evidence. (2 Russ., 844 ; 1 Whart. Cr. L., § .692 ; *Wentz* v. *People*, 37 N. Y., 303 ; *Jefferds* v. *People*, 5 Park., 522 ;

*Comm.* v. *Knapp*, 10 Pick., 477.) The question to the prisoner, on cross-examination, as to whether he had ever been arrested on a charge of bigamy, was admissible. (*La Beau* v. *People*, 34 N. Y., 233–234 ; *Turnpike* v. *Loomis*, 32 id., 127 ; *Brandon* v. *People*, 42 id., 265 ; *Real* v. *People*, id., 281 ; *Ruloff* v. *People*, 45 id., 221 ; *Conner* v. *People*, 50 id., 240–242 ; *Southworth* v. *Bennett*, 58 id., 659 ; *People* v. *Case*, 6 W. Dig., 253 ; *Main* v. *People*, 9 Hun, 113.)

*Bradley Winslow*, for defendant in error. The question to the prisoner about being arrested on a charge of bigamy was incompetent. (*Jackson* v. *Osborn*, 2 Wend., 555 ; *People* v. *Gay*, 7 N. Y., 378 ; *Hannah* v. *McKillip*, 49 Barb., 342 ; *Burveer* v. *People*, 1 S. C., 289 ; *Tefft* v. *Moor*, 59 Barb., 619 ; *Newcomb* v. *Griswold*, 24 N. Y., 299.) The evidence of Pettit, as to the wheat in the prisoner's possession, was improper and illegal. (1 Arch. Cr. Pl. (8th ed.), 388 ; *Thorn's Case*, 4 City Hall Rec., 81 ; *Bowerhan's Case* id., 136 ; *Slag's Case*, 5 id., 177 ; *People* v. *Robertson*, 1 Wh. Cr. Cas., 467 ; *People* v. *Wentz*, 37 N. Y., 384 ; *People* v. *McMahan*, 15 id., 384 ; *People* v. *Phillips*, 42 id., 200 ; 26 id., 588 ; 1 Phil. on Ev., 111 ; C. & H. Notes, 205, 206–235.)

CHURCH, Ch. J. The defendant in error was convicted at a court of sessions in Jefferson county, of burglary and larceny for breaking into an outbuilding, and stealing therefrom about six bushels of wheat. The General Term reversed the conviction for an error in rejecting evidence offered by the prisoner, and an error in allowing evidence, against the prisoner's objection. The proof on the part of the prosecution was mainly circumstantial. A material circumstance relied upon was that a small quantity of wheat of the species of that stolen was found in the pocket of the prisoner by a police officer who searched him on suspicion that he was concerned in the commission of another offence about the time the wheat in question was supposed to have been

stolen, and the police officer testified that the prisoner said it was a sample "fetched up to sell by," and that he had sold some wheat to Shead & Graves, millers at Watertown. One of that firm testified that he purchased about six bushels of wheat of some man, but did not identify the prisoner as the person of whom he purchased.

. The prisoner offered to prove by his own evidence, and that of his mother that about that time he had taken and sold wheat at another place, which was rejected by the court, and an exception taken. The district attorney asked the prisoner on cross-examination as a witness, "Were you also in 1869, along in February or March, arrested on a charge of bigamy?" This was objected to by the counsel for the prisoner. The objection was overruled, and an exception taken. These decisions were held to be erroneous by the General Term.

We concur with the judgment of the General Term, and with the reasons therefor, stated in the opinion of TALCOTT, J., and it is unnecessary to elaborate them. As to the first question the prisoner had denied that he made the statement as to the wheat, stated by the police officer, and if he could account for having wheat in his pocket consistent with his innocence, it would tend to impair the force of that circumstance, and the fact of handling and selling wheat about that time, was relevant upon that question. The weight of the evidence was for the jury. In respect to the other question clearly erroneous. Although the prisoner did not claim the privilege, the question was incompetent. It did not legitimately tend to impair the credibility of the prisoner as a witness, and was not competent for any purpose. The discretion which courts possess, to permit questions of particular acts to be put to witnesses for the purpose of impairing credibility should be exercised with great caution, when an accused person is a witness on his own trial. He goes upon the stand under a cloud; he stands charged with a criminal offence, not only, but is under the strongest possible temptation to give evidence favorable to himself. His evidence is

therefore looked upon with suspicion, and distrust, and if in addition to this he may be subjected to a cross-examination upon every incident of his life, and every charge of vice or crime which may have been made against him, and which have no bearing upon the charge for which he is being tried, he may be so prejudiced in the minds of the jury as frequently to induce them to convict, upon evidence which otherwise would be deemed insufficient. It is not legitimate to bolster up a weak case, by probabilities based upon other transactions. An accused person is required to meet the specific charge made against him, and is not called upon to defend himself against every act of his life. Neither in *People* v. *Brandon* (42 N. Y., 265), nor in the *People* v. *Connors* (50 id., 240), was the point of relevancy upon the question of credibility presented. In each case, the ground of objection was specific, and did not involve that point. (*People* v. *Brown;* not reported.)

Mr. *Greenleaf*, in his work on *Evidence*, lays down the rule that questions, the answers to which, though they may disgrace the witness in other respects, yet will not affect the credit due to his testimony, are clearly impertinent and not allowable; and even as to questions which do tend to discredit him as a witness, although sometimes allowed at *nisi prius*, he regards the rule as unsettled. He says: "The great question, however, whether a witness may not be bound in some cases to answer an interrogatory to his own moral degradation, when, though it is collateral to the main issue, it is relevant to his character for veracity, has not yet been brought into direct and solemn judgment, and must therefore be regarded as an open question, notwithstanding the practice of eminent judges at *nisi prius* in favor of the inquiry under the limitations we have above stated." To allow them at all was a departure from the old rule. Lord ELDEN said: "It used to be said that a witness could not be called on to discredit himself, but there seems to be something like a departure from that. I mean that in modern times, the courts have permitted questions to show from

transactions not in issue, that the witness is of impeached character and therefore not so credible." (*Parkhurst* v. *Lowten,* 2 Swans., 216.)

Mr. *Phillips,* in his work on *Evidence,* gives the reasons for and against allowing questions collateral to the issue, when they affect credibility. The reasons in favor are that without allowing them there would be no adequate means of ascertaining what credit is due to the testimony of a witness, and that it is especially necessary in the case of spies, inform-ers, and accomplices in order to prevent property, or even life to be endangered by the unexpected appearance of a strange witness. (2 Phil. on Ev., *943 [5th Am. ed].)

This reasoning has no application to the case of an accused person who appears as a witness. The prosecution can never be taken by surprise, either as to his being a witness, or his character. The reasoning against this kind of evidence is far more logical, and satisfactory. Mr. Phillips states it sub-stantially as follows : That the obligation of an oath only binds to speak touching the matters in issue ; that such par-ticular matters as whether the party has been in jail for felony, or suffered infamous punishment or the like, is not a part of the issue, because other witnesses could not be called to prove them ; that it would be an extreme grievance to a witness to be compelled to disclose past transactions of his life, which may have been since forgotten, and to expose his character afresh to evil report ; that if a witness is privi-leged from answering a question which is relevant to the issue because it may tend to the forfeiture of property, with much more reason ought he to be excused from answering an irrelevant question, to the disparagement and forfeiture of his character ; that in the case of accomplices an excep-tion to a certain extent might be made on account of their peculiar situation, etc. (Id.)

While the practice has obtained to some extent of allow-ing questions to a witness, the answers to which would tend to impeach his credibility, the courts have uniformly excluded questions which do not clearly have that effect. In *People*

v. *Genung* (11 Wend., 19), the question put to the prose-cutor whether he had not frequently during the session of the court offered to the prisoner that if he would settle the subject-matter of the indictment, he would leave the court and not appear as a witness, was held incompetent because it did not impair credibility. In *People* v. *Gay* (7 N. Y., 378), JEWITT, J., said: "The single fact that he (the wit-ness) had been complained of and held for trial for the com-mission of a crime, did not affect his moral character." This was upon the ground that the witness was presumed innocent until convicted. No rule of law is violated in requiring that to entitle questions to be put to accused persons, which are irrelevant to the issue, and are calculated to prejudice him with the jury, they should at least be of a character, which clearly go to impeach his general moral character, and his credibility as a witness. The old rule, not to allow irrele-vant questions to such persons, would be preferable and more in accordance with sound principles of justice; but it is unnecessary in this case to go beyond the requirement that the answer must tend directly to impeach him. It is not necessary to examine the other points.

The order of the General Term should be affirmed.

All concur, except FOLGER, J., who concurs on first ground, but dissents on second, and EARL, J., who dissents *in toto.*

Order affirmed.