(118 App. Div. 611)

### PEOPLE v. SMILIE et al.

(Supreme Court, Appellate Division, Fourth Department. March 20, 1907.)

1. CRIMINAL LAW—TRIAL—OBJECTIONS TO EVIDENCE—TIME OF OBJECTION.

Where it was understood by the court and the attorneys in a criminal prosecution that the district attorney was proving a series of connected facts, with the view to offer certain evidence, and defendant, on objecting to the preliminary questions, was permitted to state his objections in detail to the admission of the evidence, the objection was timely, though no formal offer to introduce the evidence had then been made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1630.]

2. SAME—EVIDENCE—FACTS RELEVANT TO ISSUES—SUBSEQUENT INCRIMINATING CIRCUMSTANCES.

In a prosecution for grand larceny, it was prejudicial error to admit in evidence rolls of false money found in defendant's trunks some three months after the commission of the crime, where there was no evidence to show that these rolls had any connection with the crime charged.

3. SAME—TRIAL—CONDUCT OF COUNSEL—RIGHTS AND DUTIES OF PROSECUTING ATTORNEYS.

In a prosecution for larceny, it was prejudicial error for the district attorney to ask one of the defendants concerning his connection with another robbery, after the court had clearly indicated, by sustaining an objection to a similar question just asked, that this line of testimony was improper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1661.]

Robson, J., dissenting.

Appeal from Special Term, Erie County.

John Smilie and others were convicted of grand larceny, and appeal. Judgment reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Rowland B. Mahany, for appellants.
Daniel V. Murphy, Dist. Atty., for the People.

SPRING, J. Webb was the only witness on behalf of the people of the commission of the alleged crime. He testified that, while waiting for a train in the Erie Railroad Station in the city of Buffalo, he was asked by the defendant Davis to go with him for a cup of coffee. They went together to a saloon, where they met the defendant Smilie.

Davis produced a $5 bill, and Smilie produced one of $10, to pay for the drinks which they had ordered, and the woman tending bar was unable to change either bill. In order to settle the question of payment among themselves, Davis and Smilie threw dice; Davis winning. Smilie stepped away from the bar, and Davis induced Webb to participate in throwing dice, upon the pretext that they would "have some fun" with Smilie, paying him back his money. Webb thereupon took from his pockets bills aggregating $139, and the men threw dice; Davis producing $15. A jangle ensued, and in the fracas Webb's money was taken from him.

Two witnesses, Gallagher and Mrs. Petzing, who was the woman tending bar, testified that the defendants were not the persons in the saloon with Webb, and the defendants also denied that they were there. The alleged crime was committed on the 8th of March, 1906. The defendants were arrested three months later. Their trunks were searched, and two packages resembling money characterized as "phony rolls" were found in the trunks. These rolls were exhibited to the jury and received in evidence, and I think their reception was error and very prejudicial to the defendants. It is claimed that there was no objection taken to their reception. When the police detective was first testifying, he stated that he searched the trunks in rooms occupied by the defendants, or some of them, and proceeded to disclose their contents, when the defendant's counsel objected, stating that there was no connection between these rolls and the commission of the crime charged three months earlier. The witness then stated that he found two rolls, and, when it was attempted to prove where they were found, the defendants' counsel objected, and the objection was sustained. The witness testified, in that connection, that he found a card case containing a card, and he sought to show what name was on the card, and objection was interposed; the counsel saying that it was not in evidence, and he objected to it when "offered in evidence upon the same ground as the former objection." The district attorney thereupon replied that "he would like to have the court examine those, and I am going to offer them," and the court suggested, "You had better wait until you make your proof in regard to their occupying the rooms," and the district attorney adopted the suggestion of the court. This colloquy indicated quite clearly that the district attorney intended to offer in evidence these rolls and the other articles, and also it was obvious that the counsel for the defendants expected to resist their reception.

Evidence was then given on behalf of the people tending to show that the trunks belonged to the defendants, or some of them. The detective was then recalled, and testified to unlocking the trunks and finding the two rolls which he held in his hand. Objection was then interposed by the defendants' counsel, and he said to the court that he would like to state his grounds, and the court assented. The counsel stated his objections, as follows:

"That it has not been shown by any testimony offered thus far that it was necessary, or that any of these rolls were used in the commission of the crime, and they have no more right to offer them than that a gun was found in their trunk. It is most unfair to these defendants to exhibit these to the

jury and say that these men were crooked. It is not any evidence to show that this crime was committed there. Robbery is the charge, and, if they found anything that was used there, then it might be proper testimony."

The court overruled the objection, and exception was taken, and the rolls were received in evidence without any other offer.

It is quite clear that the counsel for the defendants interposed his objection in anticipation of the offer of these rolls. The court so construed it, and allowed him to state his objection upon that hypothesis. He was not stating grounds applicable to the place where these rolls were found, but to their admissibility. Both the court and the counsel understood that the introduction of these rolls would be objected to, and, when counsel stated at length the grounds of his objection, the court realized to what they related, and overruled his objection, and received the rolls without any distinct offer of them. The office of an objection is primarily to apprise the trial judge that the counsel objecting seeks to exclude the evidence offered, and also the grounds upon which he asks for a ruling in his favor. These objections were fully satisfied by the procedure referred to. It was obvious that the district attorney was proving a series of connected preliminary facts, with a view to the offer of these rolls. The counsel made his objection to the preliminary question, and the court permitted him to state his objections in detail, not to the antecedent question, but to the rolls themselves, and then, without further preliminaries, received them, after overruling the objection to which the exception was taken. We think the objections were timely and apprised the court sufficiently of the precise point to which they applied. Church v. Howard, 79 N. Y. 415–419; Matter of Eysaman, 113 N. Y. 62–71, 20 N. E. 613, 3 L. R. A. 599.

The rolls were not competent evidence. They were found in the trunk more than three months after the alleged offense for which the defendants were indicted. There was no possible connection between the rolls in the trunk, whether there for a good or bad motive, and the claimed larceny. Webb testified that, at the time his money was taken from him, Smilie had a roll, perhaps of money, but gave no explanation of its contents or appearance. There was nothing to indicate that it contained spurious currency. The rolls received in evidence were chiefly composed of paper covered with a genuine bill, and the term "phony rolls" signified a package of that description. In order to make such evidence admissible, it must bear upon the offense charged. The rolls in the trunk in June did not tend to show that the defendants stole money from Webb in March previous. The evidence was of the most damaging character. The jury very likely reached the conclusion that the roll Smilie had in the saloon was identical with one of those found in the trunk, although there was an utter absence of proof of their identity or similarity. The district attorney was enabled to exhibit these rolls before the jury, and charge defendants with the commission of the crime alleged, because these rolls were in the trunks, although they may have been there for no dishonest purpose.

As was stated in People v. Altman, 147 N. Y. 473, 477, 42 N. E. 180, 181:

"It is impossible to say that the defendant was not prejudiced by these papers admitted against his objection. The rule that an error committed upon a trial may be overlooked, when the party complaining was not prejudiced thereby, is only applicable in cases where the error could by no possibility have produced injury."

On the cross-examination of Smilie, the following occurred:

"Q. When you were arrested, there was a man with the officer by the name of King? A. He said his name was Williams. He was not with the officer, when I was arrested, and he told me and the officer that his name was Williams. Q. He is the man who is referred to as the Englishman? A. Who has referred to him? I haven't. Q. You were accused by that man? By Mr. McIntyre: I object to that as manifestly unfair on the part of the district attorney, and he knows it. (Objection sustained.) Q. Weren't you identified by him as one of the three men who got his money at Niagara Falls? By Mr. McIntyre: I object to that. The Court: No, no, Mr. Murphy; that is the same line of questions to which the court sustained counsel's objections."

The manifest purpose of this examination was to create the impression in the minds of the jurors that Smilie had stolen money from King, and the offense charged in the indictment was stealing money. This conduct was improper, and the vice of the testimony was not cured by excluding the evidence. Manigold v. Black River Tr. Co., 81 App. Div. 381, 80 N. Y. Supp. 861. And the most vicious part of the examination was in the question put by the district attorney after the court had indicated clearly that this line of testimony was improper. The testimony of Webb, with his participation in the dice throwing, was not of the strongest probative force, and the defendants were entitled to a fair trial for the precise offense charged in the indictment.

The judgment should be reversed.

Judgment reversed, and a new trial granted. All concur, except ROBSON, J., who dissents.