PEOPLE v. NELSON.

(Supreme Court, Appellate Division, Third Department.   June 28, 1911.)

1. HOMICIDE (§ 149*)—BURDEN OF PROOF—CAUSE OF DEATH.

That decedent was fatally injured in a scuffle with accused during a quarrel between them does not require him to explain the situation or account for decedent's condition; the people being bound to show by independent facts that accused criminally caused the death.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §.274; Dec. Dig. § 149.*]

2. CRIMINAL LAW (§ 369*)—WITNESSES (§ 337*)—EVIDENCE OF ANOTHER OF-
FENSE—ADMISSIBILITY.

Ordinarily it cannot be shown as an independent circumstance that ac-
cused has committed another crime, though, if he testifies, it may be
shown on his cross-examination to affect his credibility that he has been
convicted of or has committed another crime.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824;
Dec. Dig. § 369;* Witnesses, Cent. Dig. §§ 1146–1148; Dec. Dig. § 337.*]

3. WITNESSES (§ 337*)—ACCUSED PERSONS—CROSS-EXAMINATION.

The extent of cross-examination to affect accused's credibility by show-
ing commission of another offense rests in the sound discretion of the
trial judge, but he should not be examined concerning the details of an-
other offense similar to that for which he is tried.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1146–1148;
Dec. Dig. § 337.*]

4. WITNESSES (§ 337*)—ACCUSED PERSONS—CROSS-EXAMINATION.

In a trial for killing in a scuffle during a quarrel, it was error to per-
mit accused to be asked on cross-examination concerning the details of
an assault made by him three years previously on another person.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1146; Dec. Dig.
§ 337.*]

5. CRIMINAL LAW (§ 830*)—INSTRUCTIONS—REQUESTS.

In a homicide case, accused's request to charge that if on considering
the fact that accused was dazed by a fall or otherwise when the doctor
arrived at the scene of the difficulty, and did not realize that decedent
was seriously injured, his failure to reply to decedent's remarks should
not prejudice accused's case, was sufficient to require an instruction that
whether a statement made by decedent and accused's failure to answer
was an implied admission by accused depended on how far he under-
stood the statement, and to what extent he realized the situation as it
then was.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2012,
2017; Dec. Dig. § 830.*]

Smith, P. J., and Betts, J., dissenting.

Appeal from Albany County Court.

Alfred Nelson was convicted of manslaughter in the first degree,
and he appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON,
SEWELL, and BETTS, JJ.

Mahany & Kingston, for appellant.

Rollin B. Sanford, Dist. Atty., for the People.

JOHN M. KELLOGG, J. [1] The defendant is convicted of the
crime of manslaughter in the first degree in causing the death of
William Carl Ellis. They were friends and companions. Ellis was
the larger and stronger man of the two. The evidence shows that
Ellis was at times irritable and quarrelsome; the defendant ordina-
rily peaceable and quiet. The defendant was the superintendent of an
apartment house owned by the father of Ellis, and Ellis was em-
ployed about the apartment under the superintendent. In the eve-
ning they were seen talking upon the street and approaching the apart-
ment. They entered the room occupied by the defendant, and closed
the door behind them, which was held shut by a spring lock. An
altercation and scuffle was heard in the room. Within a few min-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

utes after they entered the room the defendant came to the door dressed only in his pajamas and sent for Ellis' father, then for a doctor. Upon the arrival of the doctor, Ellis was found in a wounded condition, but neither he nor the defendant actually realized his condition. He was exhausted, and told the doctor that the defendant had hit him on the head, and later he said that they had a scuffle, and he had been hit on the head. The defendant was in a dazed condition, and apparently did not realize the extent of Ellis' injury or the real situation. He stated that nothing had happened. "We ruffled around the room together, and by and by we both went down." Ellis was found with several wounds upon his person, and died from a stab wound in the abdomen caused by an ice pick, and the bloody ice pick was found upon a lounge near by.

The circumstances narrated do not show that the defendant was criminally liable for the death of Ellis. When charged with a crime, he is not required to explain the situation or account for Ellis' condition. The people must show by independent facts that the defendant criminally caused the death. Three other circumstances are alleged to have a bearing upon the defendant's guilt. It is said that, after Ellis had abandoned hope of life, he informed his mother that the defendant had hit him on the head with an ice pick, and, when she discovered and pointed out to him the wound in the abdomen, he then said, "Oh, yes; he stabbed me." He also stated to Dr. Lewi under similiar circumstances that they were scuffling around, and the defendant hit him on the head.

This evidence does not clearly indicate any criminal act by the defendant as in a sense his death was caused by the defendant and he was stabbed by the defendant. The real question is whether the stabbing and the injury which he suffered at the hands of the defendant was a criminal act, or was done by the defendant in proper self-defense or in a manner not criminal.

The defendant was called as a witness in his own behalf. His story was not unreasonable or improbable, and is in harmony with many of the conceded facts. So far as his evidence relates to the alleged crime, it is decidedly favorable to himself, and raised in no respect an inference that his acts were criminal. His version, briefly stated, is that after they entered the office of the apartment a controversy arose, hard words followed, and he ordered Ellis out of the office. He went, saying, "I'll fix you." Defendant took off his clothing, put on his pajamas, extinguished the light in the office, and sat on his couch in the adjoining sleeping room. When Ellis entered and the defendant saw his hand coming down upon him with the ice pick in it, he threw his arms around Ellis, and they grappled. They struggled toward the door, and tripped over something, and fell with their heads against the radiator. He was somewhat dazed. The struggle continued. When he got up, he did not know that Ellis was injured, and, when told by him that he was hurt, he gave the alarm. Both had been drinking. Somewhere about 10 minutes elapsed between the time they entered the room and the giving of the alarm.

Upon cross examination, the district attorney asked him 22 questions relating to an alleged assault by him upon one Wright three years before. The jury might well infer that under circumstances very similiar to those in question, when he and Wright were in an office of which the defendant was superintendent, they had a fight with the result that the defendant was taken to the hospital, and the defendant did not know whether he hit Wright over the head with a soda water bottle or not, or threatened his life, and gives quite unsatisfactory answers to several questions upon the subject. The jury might well infer that the Wright matter in many of its details was very similar to the one in question, and that the defendant was avoiding the real truth with reference to it, and giving the most favorable view of it to himself. The defendant objected to the line of examination; that it was prejudicial and raised inferences which could not be met, to which the court replied that it could not prevent the inferences; that the people had the right to show that he had committed the crime upon Wright.

[2] Ordinarily in a criminal action it cannot be proved as an independent circumstance that the defendant has committed another crime, although if he offers himself as a witness, upon cross-examination for the purpose of affecting his credit, it may be shown that he has been convicted of crime or that he has committed a crime.

[3] The extent of this examination, however, always rests in the sound discretion of the court, and in exercising the discretion the court should remember that the defendant is not ordinarily in these cases a voluntary witness, but is coerced to submit to the examination, and the examination should be held within proper bounds. People v. Crapo, 76 N. Y. 288, 32 Am. Rep. 302. If he has committed a crime or an assault, the question should be asked and the answer obtained, but, when by an extended examination it is sought to call out the commission of a crime so similar in many respects to the one in issue, the court is called upon to see that the examination is held within proper limits.

In People v. Dorthy, 156 N. Y. 337, 50 N. E. 800, it was held proper upon cross-examination to show that the defendant had been disbarred as an attorney, but a judgment against him was reversed because all the facts and circumstances leading up to the disbarment were shown; the court saying the fact of disbarment was enough.

[4] The case against the defendant is so close that I am satisfied the court exceeded a reasonable discretion in permitting the extended examination of the defendant with reference to the Wright matter. While offered for the alleged purpose of affecting his credit, it evidently had a tendency to satisfy the jury that the defendant was probably guilty here on account of his conduct in that matter. The court limited somewhat in its charge the effect to be given to this evidence, but I think it is quite apparent that the harm had already been done, and that this evidence prevented the defendant's case from having the impartial and fair consideration to which he was entitled.

[5] The defendant's counsel requested the court to charge:

"That, if on consideration of the fact that Nelson was dazed at the time of the arrival of Dr. Brown by a fall or otherwise and did not at that time realize that Ellis was seriously injured, his failure to reply to Ellis' remarks should not be prejudicial to the defendant's case."

To which the court replied:

"I refuse to so charge, and leave that as a question of fact for the jury to determine from all the evidence."

The witnesses say that the defendant was in a dazed condition, and the testimony of the other witnesses present after the doctor was admitted to the room shows that he did not realize the situation, or understand what had been done or the results following. The request to charge was somewhat confused, but by it the defendant evidently intended to ask the court to inform the jury that a failure to reply to the statement made in the presence of the defendant when he was in a dazed condition, and did not realize the situation, was not in itself evidence against him. In other words, that they must take into consideration the condition of the defendant, the extent to which he realized and understood the statement before his failure to reply to it could be considered an admission. I think the request was sufficient to call upon the court to explain to the jury that whether this statement and the failure to answer was or was not an implied admission of the defendant depended entirely upon to what extent he understood the statement and to what extent he realized the situation as it then was. I think the jury did not have the instruction upon this question which it was fairly entitled to and which the request to charge fairly foreshadowed.

We need not determine now whether the other circumstances referred to herein taking place after the doctor was admitted to the room and also upon the trial have sufficient weight to justify a conviction of the defendant for criminally causing the death. It is apparent that the people's case is not strong, that there is so much doubt about the guilt of the defendant that a new trial should be had so that, if his guilt is to be established, it may be upon the case itself, and not by other considerations. It is also important if the alleged statement and the failure to answer is to be charged as an admission that the jury should be fully informed under what circumstances it may be treated as an admission, and when it may not be so treated.

In a case where there is so great doubt about the defendant's guilt and the punishment is so severe, these considerations make proper a new trial. The judgment and conviction should therefore be reversed and a new trial granted. All concur, except SMITH, P. J., and BETTS, J., dissenting, the latter in an opinion.

BETTS, J. (dissenting). The facts in the case are substantially stated in the opinion of Mr. Justice KELLOGG. Nelson and Ellis stood in front of the apartment house for some time talking, when they went into the office and its connecting rooms, which were also the living rooms of the defendant. The defendant was heard to apply

to Ellis an approbrious epithet, to which Ellis made no reply. The door locked automatically. Through that door Ellis was never seen to come out again or return until he was carried out after having received a mortal wound. This is so, although the entrance to that room was from the hall of a large apartment house, at an hour of the day at which it was likely to be frequented, and during all this time servants employed at this house were in the hall. Upon Nelson obtaining a physician to examine Ellis, it was found that he had five wounds upon his person, two upon his head, two upon his back, and one, the fatal one, in his abdomen.

Ellis was the stronger of the two. Nelson would have us think that it was necessary for the more vigorous man to procure an ice pick to attack Nelson as a result of a quarrel. How a man with an ice pick would inflict on himself five wounds is unexplainable. Naturally one would think that between two unarmed men, if resort was had to other weapons than those nature had provided for defense or aggression, that it would be the weaker man who would thus resort, and Ellis was not the weaker. The wounds upon the head and back were not severe, which might easily be so with a strong and unarmed person contending against a weaker one armed with an ice pick. The glancing nature of the blows might easily cause only a small wound to be inflicted.

There is nothing surrounding the facts detailed and the natural inference that a human mind would draw from a quarrel and fight such as took place in this secluded room that would lend any semblance of verity to the tale narrated by Nelson to save himself from a term of imprisonment. The sounds of conflict, the huddling together behind the elevator of the colored employés listening to those sounds, betokening that a fierce conflict was raging in that room with only two witnesses, and two participants, the evident desire to keep people from coming into the room, the lack of frankness to and concealment from the physician, the answers to the questions propounded by the district attorney to Nelson, his halting, hesitant, evasive answers on his cross-examination, his insistence that it was a hand that was about to strike with an ice pick, and that he assumed that that hand was the hand of Ellis, and all his answers must convince any person as it convinced the jury that the entire story is fabricated for the occasion.

In the opinion of Mr. Justice KELLOGG the judgment is proposed to be reversed for the reason that the defendant was asked upon cross-examination questions relating to events, actual or alleged, occurring in his life prior to this time aside from the happenings upon that night, and certain of which questions indicated an investigation of other crimes committed by the defendant. There were numerous of these questions and objection was made to three of them. Two of them were overruled, and to one of which an exception was taken. The third one was this:

"Q. Did you have some trouble with Wright?
"Mr. Mahany: I object to this line of questioning for this reason: It is collateral, can't have any real bearing on the occurrence that took place Oc-

tober 24th, incompetent and improper. In reality I don't object to it because the district attorney is bound by the answers of the witness.

"(Overruled. Exception.)"

It will be seen that the defendant's attorney did not insist upon this objection, stating that in reality he did not object to it, yet upon a formal ruling by the court he took an exception.

The question has been before the courts many times. "When a witness is cross-examined, he may, in addition to the questions hereinbefore referred to, be asked any questions which tend (1) to test his accuracy, veracity, or credibility; or (2) to shake his credit, by injuring his character. Witnesses have been compelled to answer such questions, though the matter suggested was irrelevant to the matter in issue, and though the answer was disgraceful to the witness; but it is submitted that the court has the right to exercise a discretion in such cases, and to refuse to compel such questions to be answered when the truth of the matter suggested would not in the opinion of the court affect the credibility of the witness as to the matter to which he is required to testify." Chase's Stephen's Digest of the Law of Evidence (2d Ed.) art. 129, p. 320. "Upon the trial the prisoner was a witness in his own behalf, and it is now complained that the counsel for the people, upon cross-examination, was permitted to question him as to other altercations in which he had been engaged, and other assaults which he had committed. This complaint is not well founded. When a prisoner offers himself as a witness in his own behalf, he is subject to the same rules upon cross-examination as any other witness. He may be asked questions disclosing his past life and conduct, and thus impairing his credibility. Such questions may tend to show that he has before been guilty of the same crime as that for which he is upon trial; but they are not on that account incompetent. When he offers himself as a witness, and seeks to take the benefit of the statute which authorizes him to testify in his own behalf, he takes the hazard of such questions. He must determine, before he offers himself, whether his examination will benefit or injure him. The extent to which such an examination may go to test the witness' credibility is largely in the discretion of the trial court." Allen v. Bodine, 6 Barb. 383; Fralich v. People, 65 Barb. 48; Real v. People, 42 N. Y. 270; People v. Casey, 72 N. Y. 393–398.

In People ex rel. Phelps v. Court of Oyer and Terminer of the County of New York, 83 N. Y. 436–460, Genet, the defendant, was sworn as a witness in his own behalf, and objection was made to the range of cross-examination allowed to the prosecution which was searching and severe, and extended over a wide area of subjects and circumstances and was claimed to have wandered far away from the precise issues involved, and to have seriously and unjustly prejudiced the case of the defendant, Genet, the court said:

"Our control over such an alleged error is not absolute. As a general rule, the range and extent of such an examination is within the discretion of the trial judge, subject, however, to the limitation that it must relate to matters pertinent to the issue, or to specific facts which tend to discredit the witness or impeach his moral character. People v. Brown, 72 N. Y. 571, 28 Am. Rep.

183; Ryan v. People, 79 N. Y. 594; People v. Crapo, 76 N. Y. 290, 32 Am. Rep. 302. If this limitation is not disregarded, we can only interfere where there has been an abuse of discretion. Great Western Turnpike Co. v. Loomis, 32 N. Y. 127, 88 Am. Dec. 311; La Beau v. People, 34 N. Y. 230; People v. Casey, 72 N. Y. 393. Our only inquiry, therefore, in the present case is whether the cross-examinations, especially of Genet, went beyond the pre- scribed limit, or if not were pushed so far as to amount to an abuse of dis- cretion. * * * Looking the cross-examinations all over, considering the peculiar and somewhat novel character of the case, we cannot say that the limit of subject or of just discretion was exceeded, or that any wrong was done to the accused. A party who seeks to testify in his own behalf must take the risk if there are vulnerable joints in his harness."

In People v. Irving, 95 N. Y. 541, a somewhat celebrated assault case, the headnote is as follows:

"Upon the trial of an indictment for an assault, where the defendant as a witness in his own behalf had given material testimony, in conflict with that given on the part of the prosecution, held, that it was proper, within the dis- cretion of the trial court, as bearing upon his credibility, to ask him upon cross-examination if he had not committed an assault upon another person."

The opinion fully bears out the headnote and the case refers to People v. Casey, supra, with approval, stating that that case is decisive of the one at bar.

In People v. McCormick, 135 N. Y. 663, 32 N. E. 26, the defendant was indicted for murder in the first degree and convicted of man- slaughter in the first degree. The conviction was affirmed by the Gen- eral Term, and which decision was affirmed by the Court of Appeals, the court holding:

"Our attention is called to but one exception and that was taken to the ruling of the trial judge overruling defendant's objection to the following question: 'Is it not a fact that in the month of September, 1890, two months or about prior to Gillespie's death, in a saloon known as the Manhattan, in Chatham Square, that you drew a pistol on two disreputable women and threatened to shoot them, and didn't Rowe, the bartender, draw a revolver, and, pointing it at you, did he not say, "Drop that pistol or I will blow your damned brains out"?' The defendant had been examined as a witness on his own behalf, and this question was put to him by the prosecution on his cross- examination. The defendant having made himself a witness was subject to the same rules of examination as any other witness, and the question was competent to affect his credibility. People v. Casey, 72 N. Y. 393; People v. Irving, 95 N. Y. 541."

The leading case now in this state upon this class of testimony is People v. Webster, 139 N. Y. 73, 34 N. E. 730. In that case the defendant was indicted for the crime of murder in the first de- gree, and was convicted of manslaughter in the first degree. The defense was self-defense. The defendant was sworn as a witness in his own behalf, and on his cross-examination he was asked by the dis- trict attorney questions in regard to vicious or criminal acts of his life. The court held:

"We do not think any error was committed in permitting the district at- torney upon cross-examination of the defendant to show the circumstances under which he met the woman with whom he was living and the kind of life she was then leading. The questions were all within the range of a proper cross-examination. Their manifest purpose was to prove that his relations to this woman were unhallowed and adulterous in their origin, that their subsequent life together was that of libertine and mistress, and not of hus-

band and wife, and that his word was therefore not entitled to the same weight as if his conduct had always been upright and blameless. It is now an elementary rule that a witness may be specially interrogated upon cross-examination in regard to any vicious or criminal act of his life, and may be compelled to answer unless he claims his privilege. A party who offers himself as a witness in a criminal cause is not exempt from the operation of the rule. He is not compelled to testify, and, if not examined, the law provides that it shall not give rise to any presumption against him. When he elects to become a witness, it is for all the purposes for which a witness may be lawfully examined in the case, and he is not, in the constitutional sense, 'compelled to be a witness against himself,' although, when subjected to the test of a legitimate cross-examination, he may be required to make disclosures which tend to discredit or to incriminate him. People v. Tice, 131 N. Y. 657, 30 N. E. 494, 15 L. R. A. 240. The extent to which disparaging questions, not relevant to the issue, may be put upon cross-examination, is discretionary with the trial court, and its rulings not subject to review here unless it appears that the discretion was abused. Great Western Turnpike Co. v. Loomis, 32 N. Y. 127, 88 Am. Dec. 311; Greton v. Smith, 33 N. Y. 245. It is urged that this evidence should have been excluded, because it tended to implicate the defendant's wife, who was a witness for him, and thus to impeach her in an unauthorized way before the jury. But any apprehended misuse of this species of evidence may always be avoided by asking and obtaining an instruction to the jury that it is only to be considered in determining the credibility of the witness who makes the confession."

The defendant Nelson did not claim his privilege in the case we are considering, and I consider People v. Webster, 139 N. Y., 34 N. E., supra, authority for the questions asked by the district attorney in this case. Nothing in People v. Dorthy, 156 N. Y. 237, 50 N. E. 800, holds anything contrary to the cases which I have cited so far as applied to the facts in the case we are considering.

The only case which I have found that seems to be in apparent conflict with what I consider to be the rule in this state is People v. Crapo, 76 N. Y. 288, 32 Am. Rep. 302, and that is in my opinion not a departure from the rule. Crapo was convicted of burglary and larceny, and was sworn in his own behalf. The trial was in 1879. The district attorney asked Crapo on cross-examination: "Were you also in 1869, along in February or March, arrested on a charge of bigamy?" An objection thereto was overruled, and an exception taken. The court held that the question was incompetent and the judgment reversing the Trial Term was affirmed; Judges Folger and Earl dissenting. Manifestly that case was not this case. Crapo was arrested on a charge of burglary and larceny. The matter of proving on cross-examination that a witness has been arrested has repeatedly been held to be incompetent. It is not something that the witness had done, but something that was done to him and may have been done by mistake, or the arrest may have been wrongful. In People v. Noelke et al., 94 N. Y. 137–144, 46 Am. Rep. 128, the court distinguished People v. Crapo, supra, and questions asked of the defendant on cross-examination in that case as to whether he had been tried and convicted of violating the law prohibiting the sending of lottery circulars through the mail, which evidence was taken over objection, were held to be no error and the judgment of conviction was affirmed. It will be noted that in People v. Crapo, supra, the question asked called for an answer as to what was done to the prisoner, the defendant, not

something that he had done himself, which distinguishes it in my opinion from the class of cases to which I have been referring, and from the questions asked by the district attorney of Nelson, concerning his trouble with Wright, which all related to actions taken by Nelson, and not to court or other proceedings by some one else against Nelson.

I have not overlooked the case of People v. Smilie, 118 App. Div. 611, 103 N. Y. Supp. 351, which was decided on the same principle as People v. Crapo, supra. The questions related solely to what another person had said of or to Smilie, and not to anything that Smilie had done.

Under the rulings of the court of last resort in the cases above cited, I am of the opinion that no error was committed by the court in permitting this cross-examination.

It follows that the judgment of conviction should be affirmed.