(63 App. Div. 158.)

MOWBRAY v. GOULD.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. CONTRACT—EVIDENCE—BURDEN OF PROOF—VERDICT.
     Where, in an action for breach of an alleged contract to employ plaintiff for life, he testified the contract was oral, and after he was discharged wrote several letters asking to be taken back as a favor, but made no claim of right, and before the action his attorney threatened to sue defendant on entirely different grounds, the contract being positively denied by defendant, a verdict for plaintiff is not justified.

2. SAME—MATERIAL EVIDENCE—PREJUDICE OF JURY.
     Where plaintiff alleged that, because of injuries received while in defendant's service, defendant agreed to employ him for life, and sued to recover for breach of such alleged contract, evidence of the treatment he received for such injuries, the pain he suffered, and the probable future effects was incompetent.

3. SAME—CHARGE TO JURY.
     Plaintiff claimed that he was injured while serving in defendant's yacht, and that in consequence thereof defendant agreed orally, when no one else was present, to employ plaintiff for life. Defendant denied making such contract. The court instructed the jury that they might consider the fact that defendant had failed to call certain persons who were guests on the yacht at the time plaintiff was injured. *Held* error, since there was no claim that they had any knowledge of the alleged contract.

4. SAME—CROSS-EXAMINATION.
     In an action for breach of an alleged contract of employment defendant denied the contract and testified in his own behalf. On cross-examination the court required him to answer questions relative to his relations with certain women, whether he did not pay the living expenses of one of them, and where he kept his clothes. *Held* an abuse of dis-

cretion, since a witness should be protected from impertinent inquiry into the secrets of his private life, which have no bearing on the issues being tried.

Appeal from trial term, New York county.

Action by Frank D. Mowbray against Howard Gould. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

A. H. Hummel, for appellant.

Wales F. Severance, for respondent.

McLAUGHLIN, J. This action was brought to recover damages for the breach of an alleged contract. The complaint alleges, in substance, that the plaintiff, on the 4th of July, 1893, received personal injuries of a serious character by the premature explosion of a defective distress signal, which he discharged by the direction of the defendant while on the latter's yacht, and that on the following day a contract was made by which the plaintiff undertook to render services to the defendant as a valet, and the defendant agreed to employ him in that capacity, for life, at an agreed compensation of $80 per month, together with board and lodging, and as a part of the consideration of the contract the plaintiff agreed to and did refrain from bringing an action against the defendant to recover damages sustained on account of his injuries; that the plaintiff performed the contract on his part until August 15, 1897, when he was, without fault or excuse, so far as he was concerned, summarily discharged. The answer substantially denied the material allegations of the complaint, and sets up the statute of frauds as a defense to the cause of action pleaded. The plaintiff had a verdict for $5,000, and from the judgment entered thereon the defendant has appealed. We are of the opinion that the judgment must be reversed, (1) because the verdict is against the weight of evidence; (2) because errors were committed in the admission of evidence; (3) because errors were committed in the instructions given to the jury; (4) because the trial court abused its discretion as to the cross-examination of the defendant.

1. The action, as already indicated, was brought to recover damages for the breach of a contract. The issue under the pleadings was (1) whether a contract had been made, and (2) whether there had been a breach of it. To establish the issue as thus formed, the testimony on the part of the plaintiff, which consisted solely of that given by himself, unsupported by any other witness, was substantially as follows: That on the 4th of July, 1893, he was in the employ of the defendant as a steward on his yacht. That he was directed by the defendant at that time to discharge some fireworks, and in carrying out such direction, by reason of the negligence of the defendant, was seriously injured, the sight of one eye being entirely destroyed besides sustaining other grave injuries. That on the following day he was sent to Bellevue Hospital, and just before he left the yacht the defendant said to him:

"Mowbray, I am awfully sorry that this accident occurred. It is my fault, and I don't want you to mention anything at all about it to the newspaper reporters. If any lawyer comes to see you, and tries to make you bring a suit against me for injuries, I don't want you to have anything to do with them. If you conform to my wishes, and don't bring any suit against me, don't make any claim against me, and keep the names of my guests out of the papers, I will employ you for life."

He also testified that he went to the hospital, and remained there until about the 20th of the same month, when he left, went to the office of the defendant, and had a further talk with him, in which the defendant said: "I will employ you for the rest of your life as a valet, at a salary of $80 per month and found," and that he acquiesced in this proposition, and immediately thereafter entered upon the discharge of his duties as a valet, and continued to perform the same until the 15th of August, 1897, when he was, without any cause or provocation whatever, discharged.

The defendant denied that he ever made the contract alleged, or any contract whatever, to employ the plaintiff for any definite time. He denied that he requested the plaintiff to refrain from bringing an action to recover for his injuries, or to keep the names of his guests on the yacht out of the newspapers. In short, he denied all of the testimony of the plaintiff, so far as the same related to the making of the contract alleged in the complaint. Had there been no other evidence in the case, then, undoubtedly, the credibility of the respective parties would have been for the jury; but the defendant, in addition to denying that he ever made the contract, put in evidence certain letters written to him by the plaintiff, which not only tend in a high degree to corroborate the testimony of the defendant, but, as it seems to us, clearly and conclusively demonstrate that the plaintiff, when the letters were written, did not even suppose that he had any legal claim upon the defendant, much less that he had ever made a contract with him in reference to employment. The defendant contended that he discharged the plaintiff for drunkenness, and the inference to be drawn from one of the letters, at least, sustains him in that respect. On the 4th of November, 1897, the plaintiff wrote the defendant a letter, in which he said, among other things:

"Excuse the liberty I take in writing you, but won't you please help me to find some kind of employment. I have tried hard myself. * * * I know, Mr. Gould, it is presumptuous on my part to ask you, after the mean way I treated you, but can only say I am heartily ashamed of it, and ask you to forgive me. It is needless to say that I have conquered my enemy, drink, and I would indeed try to deserve in the future whatever you could do for me, and act honorably towards you."

This letter having remained unanswered, on the 16th of November following the plaintiff again wrote the defendant, saying:

"Not receiving any answer to my last letter, I venture again to ask you to help me. * * * You have been good to me in the past. Won't you give me one more chance to get back your respect, and there is nothing I won't do for you. Am almost destitute and down to my last dollar. If you won't help me, I don't know what I shall do. Please answer this, and give me one more chance."

This letter the defendant did not answer, and six days later the plaintiff's attorney in this action wrote the defendant, saying:

"I have been retained by Frank D. Mowbray to recover damages from you for injuries sustained by him on July 4, 1893, which said injuries were occasioned by an explosion of a distress signal on board the Hildergrave, which was set off at your request and by your instructions."

It will be observed that in the letters of the plaintiff, or in the letter written by his attorney, threatening action, not a suggestion is made that he has a contract with the defendant, or that the defendant is liable to him in any sum whatever by reason of a breach of a contract. Indeed, the plaintiff in his letters seeks to obtain something as a favor, while his attorney, as far as any reference whatever may be drawn from his letter, says that the plaintiff's claim is based upon negligence by reason of the explosion of the distress signal. The defendant having failed to answer either the letters of the plaintiff himself or his attorney, this action was brought, and, indeed, after its commencement, the plaintiff again wrote the defendant, saying:

"Won't you please help me to go to London to see my child, who is very sick. I have hardly any work since I left your employ, and cannot get a decent position on account of the loss of my eye, and I have had a hard experience since I left you. I know, Mr. Gould, it was wrong of me to bring suit against you after your kindness to me. Please help me, and I will do anything in my power to serve you faithfully, and will prevent my case going any further."

The plaintiff, of course, was not entitled to recover unless he established, by a preponderance of evidence, not only the existence of the contract alleged in the complaint, but also the breach of it on the part of the defendant. When his letters and the letter of his attorney, written immediately prior to the commencement of the action, are read in connection with the testimony of the plaintiff, all of which is denied by the defendant, it at once becomes apparent, as it seems to us, that he wholly failed to fulfill the requirements of the law in maintaining a cause of action. The attempted establishment of his claim rests entirely upon his unsupported testimony, the effect of which is almost wholly, if not entirely, destroyed by the letters which he himself has written, to say nothing of the letter which his attorney wrote immediately prior to the commencement of the action. If the plaintiff had a contract of the character alleged in the complaint, he would not have written the defendant as indicated in these letters. He would have demanded what was his due,—his legal rights,—and not have been seeking something from him as a favor. This would have been natural. Any other course is inconsistent with the existence of a contract. When this is considered in connection with the further fact that the defendant positively denied the existence of the contract, it seems to us it must be held, under every well-recognized rule relating to the subject, that the verdict is against the weight of evidence, and must be set aside, and a new trial ordered.

2. The plaintiff was permitted to prove the treatment which he had undergone for the injuries sustained by him by reason of the explosion; the pain he had suffered from such injuries; how the loss of one eye had affected the sight of the other, and the possibility that it

would ultimately destroy it. This evidence was clearly inadmissible. It had no bearing whatever upon the issue involved, and should have been excluded. It was of the kind and character to prejudice a jury, and that it had that effect is sufficiently evidenced by the verdict. The objection to it should have been sustained, and the evidence excluded.

3. The court, in submitting the case to the jury, instructed them that they might take into consideration the fact that the defendant had failed to call certain persons who were guests upon his yacht at the time the plaintiff was injured. This was excepted to, and we think the exception was well taken. It is not claimed—indeed, it is not even suggested—that these guests, or any of them, heard the conversation which the plaintiff claims resulted in the contract alleged, or that anything they might have testified to would have thrown any light on that subject whatever. On the contrary, the plaintiff himself testified that no one was present when he had this talk with the defendant. The jury were also instructed that they might consider the fact that it appeared that a Miss Clemmons, whom the plaintiff testified, at least inferentially, was the real cause of his discharge, was in the court room during the trial, and was not called as a witness to deny certain statements made by the plaintiff. This was excepted to, and we think this exception was also well taken. There is nothing in the record before us to show that Miss Clemmons was in the court room at all during the trial.

4. We are also of the opinion that the judgment must be reversed on the ground that the trial court abused its discretion in permitting the plaintiff's attorney to cross-examine the defendant on immaterial and irrelevant matters, the answers to which could only tend to humiliate and degrade him. It is unnecessary to refer to this testimony at length. It is sufficient to say that it relates to the defendant's relation with certain women; as to how long he had known them; how frequently he had visited them; whether or not he kept some of his clothes where one of them lived, and whether he did not pay the living expenses of one of them. The defendant claimed his privilege,—refused to answer these questions, on the ground that they were highly improper, ungentlemanly, and cowardly,—but, notwithstanding this fact, the court directed him to answer, which he did. It is unquestionably true that the cross-examination of a witness, and the extent to which it shall be carried, rests in the discretion of the trial court, subject, however, to this qualification: that such discretion can always be reviewed by an appellate court. The object of a trial is to ascertain the truth, in order that the court may administer justice between the parties. Testimony is for the purpose of enabling the court to determine the truth, in order that the ultimate object of the trial may be attained. Whether this defendant knew certain women—whether he paid their living expenses—manifestly threw no light on the subject-matter of the litigation, and it is perfectly apparent that such questions were propounded to him, not for the purpose of testing his credibility, but for the sole purpose of degrading, humiliating, or bringing him into disrepute with the jury. This purpose being manifest, the court should have sustained the ob-

71 N.Y.S.—24

jections to such questions. It cannot be that because a party refuses to submit to a demand made upon him, and himself goes upon the witness stand to contradict testimony given by his adversary, he can, by reason of that fact, be compelled to divulge the secrets of his life, unless such secrets are connected with, or have some bearing upon, the matter being tried. A party, when he becomes a witness, even on cross-examination, is entitled to be protected. Witnesses have some rights which courts are bound to respect and protect. Turnpike-Road Co. v. Loomis, 32 N. Y. 127, 88 Am. Dec. 311. Attacks of the character set out in this record cannot be made upon one's private life under the guise of a cross-examination. Their purpose is either to coerce the party into a settlement, or else to unduly and unjustly prejudice the jury against him. Such examinations tend to bring the administration of the law and the trial of actions into disrepute, and to lessen the respect which litigants have for the courts.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and HATCH and LAUGHLIN, JJ., concur.

PATTERSON, J. I concur in the conclusion that the verdict is against evidence, and consequently that a new trial should be ordered.